SHEEHAN v. LEVY et al.　(No. 287–3541.)

(Commission of Appeals of Texas, Section B. March 22, 1922.)

1. **Appeal and error** ⚐1094(2)—**Where determination of district court and Court of Civil Appeals on conflicting evidence is the same it is binding upon Supreme Court.**

Where the district court and the Court of Civil Appeals make the same determination on conflicting evidence, the determination is binding on the Supreme Court.

2. **Torts** ⚐10—**Trade union's withdrawal of its members purely to injure business of their employer is actionable.**

The withdrawal by a labor union of the employés of an employer, purely for the purpose of injuring the employer's business, is wrongful and therefore actionable.

3. **Injunction** ⚐101(2)—**Labor union not enjoined from withdrawing men from employment of employer who refused to join certain organization.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5244, 5245, an employer was not entitled to enjoin labor union from withdrawing, after 60 days' notice, its members from employment because of refusal to join an association requiring its members to comply with certain conditions, under a rule of the union prohibiting members from working for employer not a member of such organization, adopted to better the working conditions of the union, in the absence of a showing of malice or ill will on the part of the union toward such employer.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by P. J. Sheehan against M. B. Levy and others. Judgment for defendants was affirmed by the Court of Civil Appeals (215 S. W. 229), and plaintiff brings error. Judgments of district court and of Court of Civil Appeals affirmed.

Geo. T. Burgess, of Dallas, for plaintiff in error.

Burgess, Burgess, Chrestman & Brundridge, of Dallas, for defendants in error.

POWELL, J. P. J. Sheehan was a plumbing contractor in the city of Dallas in the year 1918. At that time he was installing fixtures in one of the buildings of the Southern Methodist University and in the Texas & Pacific Railway building. He had other contracts on hand of very minor importance. He was working plumbers in the summer of 1918, who were members of Local Union No. 100 of Journeymen Plumbers. These laborers were employed from week to week, and there is no contention that they were under contract to work for any specific length of time.

Certain controversies arose from time to time in the latter part of that summer, between Royse, the business agent of the Local Union, representing his men, and Sheehan. Finally, early in August, Royse advised Sheehan that the Local Union had a working agreement with the Master Plumbers' Association, under which many benefits were conserved to the workmen, and that, for that reason, Sheehan should join the Master Plumbers' Association and subscribe to the working agreement aforesaid. In fact, Royse told him that his men could not afford to work for him after October 1st, that year, unless he did join the Association aforesaid.

Sheehan, for reasons satisfactory to himself, declined to join the Association of Master Plumbers, and, about the middle of October, 1918, the Local Union withdrew its men who were working for Sheehan. The latter was paying union wages and observing union hours at the time, but he did not, at any

time, offer to sign a contract giving to the laborers all the rights which the members of the plumbers' association accorded to them.

Sheehan filed his petition in the district court of Dallas county, alleging that the Master Plumbers' Association and the Local Union had conspired together and agreed that the latter should "pull" Sheehan's men; that the Master Plumbers' Association required the Local Union to prevent its members from working for anyone except a member of their association; that the Local Union withdrew its men from Sheehan with malice aforethought, and for the sole purpose of injuring him; that he could not get others outside of the Local Union who were competent to do his work; that he was about to suffer irreparable injury; that the Master Plumbers' Association and the Local Union should both be enjoined from "pulling" his men or interfering with them in any way; that he should have judgment for damages he had already sustained.

The Master Plumbers' Association members and the Local Union all answered, denying the allegations in toto, and the latter pleaded that it took the action in question for a lawful purpose, in a peaceful way, and solely for the betterment of its members and the serving of a legitimate purpose of their own. The district court gave a prompt hearing on the injunction phase of the case, and a great deal of testimony was introduced by all the parties. The record' is very lengthy. The trial court refused to enjoin either the Master Plumbers or the Local Union as prayed for. Its judgment, refusing the injunctions, upon appeal by Sheehan, was affirmed by the Court of Civil Appeals at Dallas. See 215 S. W. 229.

The cause is now before us upon writ of error granted by the Supreme Court, upon application therefor by Sheehan.

The evidence was conflicting on Sheehan's allegations that the Master Plumbers' Association had conspired with the Local Union to withdraw Sheehan's laborers and injure him. The district court and the Court of Civil Appeals decided the conflict against Sheehan's contention. For instance, we quote as follows from the opinion of the Court of Civil Appeals:

"In other words, the testimony of the members of the Master Plumbers' Association, if true, fully and completely exonerates them and said association from any connection with or complicity in the action of said Local Union No. 100, in causing any of its members to cease working for appellant, and from any interference on their part of the free exercise by appellant of his right to retain in his employ the men working for him, or to engage whomsoever he pleased in the conduct of his business. It was the peculiar province of the trial court, in view of the conflicting state of the evidence, to determine whether or not appellant was entitled to the injunctive relief asked as against the Master Plumbers' Association and its members,

and, having determined that issue against him, we are not authorized to reverse and set aside his action, even though the law applicable to the evidence adduced by appellant would have entitled him to the relief sought."

[1] When the record upon any point contains conflicting evidence, and the district court and Court of Civil Appeals make the same determination of the conflict, the result is binding upon the Supreme Court. See Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S. W. 1030. Therefore, we hold that Sheehan was not entitled to an injunction, under the facts in this case, as against the Master Plumbers' Association, or its members, also named defendant.

This brings us to the determination of the contention by Sheehan, that he was entitled to an injunction against the Local Union preventing its members from ceasing work for him. We think the Court of Civil Appeals also correctly decided that this injunction was properly denied by the district court. We have reached this conclusion after a most careful reading of the statement of facts.

The law upon this point is well settled in Texas, as well as in other jurisdictions. The Supreme Court of Texas, in the case of Delz v. Winfree, 80. Tex. 400, 16 S. W. 111, 26 Am. St. Rep. 755, speaks as follows:

"Plaintiff's petition goes further than to charge that each of the defendants refused to sell to him. It charges that they not only did that, but that they induced a third person to refuse to sell to him. It does not appear from the petition that their interference with the business of plaintiff was done to serve some legitimate purpose of their own, but that it was done wantonly and maliciously, and that it caused, as they intended it should, pecuniary loss to him.

"We think the petition stated a cause of action and that the demurrer should have been overruled."

In the very recent case of Griffin v. Insurance Co., 235 S. W. 202, the Commission of Appeals inserted in its opinion the notation made by our Supreme Court in granting the writ of error therein. We quote from said notation as follows:

"A man may lawfully refuse to have business relations with another for any reason—on account of whim, caprice, prejudice, or ill will. He may lawfully induce others to refrain from having business relations with such third person, though it injuriously affects such person, provided his action be to serve some legitimate interest of his own."

The Commission of Appeals, in the Griffin Case, supra, followed the quoted notation and applied said rule to a determination of the case in hand.

The same rules are announced by the United States Circuit Court in a very able opinion in the case of Railway Co. v. Pennsyl-

vania Co., 54 Fed. 730, 19 L. R. A. 387. The opinion in that case was written by Justice Taft.

[2] In granting the writ of error in the case at bar, our Supreme Court says that, if the Sheehan workers were withdrawn for no other purpose than to injure his business, the withdrawal was wrongful and therefore actionable. So the law is well settled, and we come now to a consideration of the statement of facts to determine whether the Local Union withdrew its men from Sheehan, for the sole purpose of injuring his business, or whether they did so in order that they might serve some legitimate interest of their own. What are the facts?

[3] Arts. 5244 and 5245 of Vernon's Sayles' Revised Civil Statutes of Texas authorize organizations such as labor unions, and give them the right, within certain bounds, to act together to promote their general welfare. Not only does the law of Texas so permit, but other authorities hold that laboring people may "organize for the purpose of promoting their common welfare, elevating their standard of skill, advancing and maintaining their wages, fixing the hours of labor and the rate of wages paid, obtaining employment for their members." See Cyc. vol. 24, p. 819.

After a thorough consideration of the statement of facts in the case at bar, we conclude that the action of the Local Union in question was well within its rights under Texas statutes and the rule just quoted from Cyc.

Before proceeding further, we will say that this case does not involve boycotts or picketing. There is no evidence in the record to bring this case within the condemnation of the rule so ably announced by Chief Justice Taft of the United States Supreme Court in the case of Truax v. Corrigan, decided some 90 days since and published in 257 U. S. ——, 42 Sup. Ct. 124, 66 L. Ed. 132. In the case at bar, the Local Union did not interfere in any way with Sheehan in the continuance of his contracts. They did not picket his place of business. They made no threats. They spread no damaging reports about him. They did not ask any others to refrain from working for him. The only thing done was to withdraw from him, after 60 days' prior notice, its members who were then at work for him.

There is absolutely no evidence in this record showing any malice or ill will on the part of the Local Union toward Sheehan. On the contrary, it is full of testimony showing that their relations were at all times of the most friendly character. In the first place, the rule of the Local Union requiring its members to work only for contractors who were members of the Master Plumbers' Association was entirely impersonal. It was not directed toward Sheehan alone. It was a general rule. The record tends to show that all individual plumbing contractors in Dallas joined the association after the promulgation of the rule in question except Sheehan. It further shows that the Local Union did everything in its power in a friendly and proper way to induce Sheehan to join the association and come within the rule. Sheehan offered certain trivial objections to becoming a member of the association. For instance, he said he had not been invited to join. The Local Union then saw to it that the invitation was extended. Not only so, but the initiation fee was reduced from $250 to $125, that he might be the more able financially to join. The entire record is teeming with evidence that Sheehan would have been most cordially admitted to membership in the association. It would be difficult to find a fact case showing more effort on the part of a union to protect a contractor than was shown by the Local Union in question in the case at bar. As already stated, Sheehan was given 60 days' notice of the consequences which would follow his failure to join the association.

But counsel for Sheehan insists that the latter should not be deprived of his liberty as an American citizen. No one made any effort to so deprive him. He had the right to decide whether he would join the association and subscribe to its working agreement with this Local Union, and thereby continue to work the Local's members, or would refuse to do so and employ other laborers. This union contained 40 or 50 members at the time. There is much evidence in the record that Dallas has many other plumbers. There were nonunion plumbing firms and other plumbers not connected with any firm or union. Sheehan could have worked them and exercised his option not to join the association. We see no reason why he should be permitted to say he will not work any one except members of Local Union No. 100 and at the same time dictate the terms of his contract with the members of that union. If he wants to work them and them only, and is unwilling to subscribe to their terms, which they can obtain from other contractors, Sheehan can blame no one but himself. Certainly, men cannot be censured for working where they feel that their general welfare is better subserved.

The district court may have very well concluded that the withdrawal of the men was not damaging Sheehan. The testimony showed he had only two contracts of any moment on hand at the time. He needed one plumber for 7 or 8 days to finish his work at Southern Methodist University, and one for about 20 days to finish at the T. & P. building. If Sheehan had bestirred himself at all, we feel warranted in saying, from the record, that his work could have been promptly completed and no damage would

have been incurred. Therefore, the trial court may have concluded that these facts did not authorize an injunction. Sheehan admitted that he made no effort whatever to get any one to replace the men who had been withdrawn.

We are not prepared to say that the withdrawal of the men could have been justified had Sheehan tendered them a contract containing the 21 sections which are included in the working agreement entered into July 22, 1918, between the Local Union in question and the Master Plumbers' Association. If the members of the Local Union could have gotten exactly the same contract with Sheehan that the Master Plumbers offered them, we doubt if they would have had the right to quit working for him just because he would not join the association. The Local Union should not be permitted to dictate membership in some outside organization as a condition precedent to their working for a given individual, where the Local Union would not reap any additional benefits by reason of its demand. We think, in the case at bar, the Local Union was not interested primarily in building up the Master Plumbers' Association. Its increase in membership was only an incident to their chief purpose to better the working conditions of the men. The fact that Sheehan did not join the association and avoid all this litigation is strong evidence, to our minds, that he was unwilling to accede to the 21 conditions embodied in the working agreement aforesaid. That being true, he has no right to complain. Certainly, no one can, in any wise, be censured for choosing to work where he fares better. Sheehan paid union wages and observed union hours, as hereinbefore stated, but there is no pretense that he was willing to accede to the 21 rules in question.

We do not think it necessary to go into the rules of the working agreement. They are in the record. They speak for themselves.

A few reasons for the rule adopted by the Local Union are mentioned by its business agent, Royse, as follows:

"The benefit we received by having a man belong to the Master Plumbers' Association is that we can notify the Master Plumbers' Association, through its secretary or conference board, that certain members are not living up to these agreements or requirements, and have them correct it, which method is easier and less expensive to our union. I have had to furnish the Department of Labor in Washington with reports with reference to our strength. * * * Our board, that is the conference board of the Journeymen Plumbers' Local Union, reached an agreement among themselves and adopted that agreement that we would prohibit our men from working for any one who is not a member of the Master Plumbers' Asso-

ciation, for the reason that, with the proposition handled that way, it would lessen the need for a busines agent, and in case of any trouble the two conference boards could just get together and settle any difficulties that might arise, and if we worked for none other than Master Plumbers, they could handle their men and we handle ours, and complaint can be made to the association, whereas, men working for these outside shops there is something always coming up that requires the service of the business agent all the time. * * * I had no malice against Mr. Sheehan in taking the action I took, but I took such action because it was one of our rules; I thought it was for the best interest of the union." (Statement of facts, pp. 83–85.)

From the testimony above quoted, it will be seen that the rule in question obtained at least two advantages for the men. It reduced the expense of operating the union and thereby lessened the dues of its members. It greatly facilitated the settlement of disputes between the contractor and the laborers. These are concededly valuable rights. They are undisputed in the record.

The Court of Civil Appeals, in the instant case, has given us the benefit of a very able opinion by the late Justice Talbot. On pages 232 and 233 of 215 S. W. he shows some of the benefits to the men, flowing from the rule adopted. He concludes his survey of the facts with the following statement:

"It is fair to conclude from the record now before us that the purpose of appellees, in taking the action complained of, was to promote the interest of the members of their organizations, and not for the purpose of maliciously working injury and damage to appellant, and does not come under the condemnation of the rules of law and decisions which firmly prohibit all combinations and conspiracies formed in restraint of trade, or to injure and damage the business of the person or persons at whom they are directed."

The trial court found that the union, in taking its action, was serving a legitimate purpose of its own. The Court of Civil Appeals so found. We think there is evidence to support such finding. In fact, we think there is an abundance of testimony in support thereof. Therefore, we think the Supreme Court is bound by that finding of fact. As said before, the law is clear. We think the Court of Civil Appeals correctly affirmed the judgment of the trial court.

Therefore, we recommend that the judgments of the district court and the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.