CITY OF HOUSTON et al.

v.

SOUTHWESTERN BELL TEL. CO.

No. 12685.

Court of Civil Appeals of Texas.
Galveston.

Dec. 9, 1953.

Rehearing Denied Dec. 17, 1953.

Will Sears, City Atty., Houston, Jack W. Mills, Asst. City Atty., Oscar J. Cadwallader, Jr., and John R. Bennett, Asst. City Atty., Houston, for appellants.

Vinson, Elkins, Weems & Searls, David T. Searls, Tarlton Morrow, M. C. Chiles, and C. E. Coolidge, Houston, Ed Gossett and William A. Gray, Dallas, for appellee.

HAMBLEN, Chief Justice.

This is an appeal by the City of Houston and the Mayor and members of the City Council of the City of Houston from an order of the District Court of Harris County granting appellee Southwestern Bell Telephone Company a temporary injunction enjoining the appellants, pending final hearing for permanent injunction, from enforcing a schedule of local exchange telephone rates fixed by the City Council of Houston by ordinance dated December 1, 1949. The appellee as applicant before the trial court for the injunctive relief, based its right thereto upon the proposition that the rates fixed by the December 1, 1949 ordinance had become unjust and unreasonable to such an extent that the enforcement thereof resulted in confiscation of appellee's property. Each contention made by such appellee was denied by appellants and upon the issues thus joined the hearing proceeded before the trial court, resulting in the appealed-from order.

Despite the voluminous character of the record presented and the extensive arguments made by the litigants, this Court is of the opinion that this case insofar as the reaches of this appeal are concerned, is controlled by well-recognized principles of law, which, when applied to the present controversy, can result only in an affirmance of the judgment of the trial court, and while the decisions applying these rules are

numerous, it appears upon examination that their combined effect has been declared in the opinion of this Court in the case of City of Baytown v. General Telephone Company of the Southwest, Tex.Civ.App., 256 S.W.2d 187, 194 (writ refused, n. r. e.). In that case the late Chief Justice Monteith, after a lengthy review of the authorities in this and other jurisdictions, summarized the law which he found to be controlling in that case and which by analogy is applicable to this in the following language taken from his opinion: "A review of the decisions involving rates of public utilities shows that a temporary injunction will issue when three things are made to appear: (1) that there is a reasonable probability that the utility will succeed on final hearing, (2) that the loss to the utility resulting from a refusal to grant the temporary injunction will be irreparable, and (3) that the customers can be adequately protected by bond."

■ And further said the Court in that case: "It is well settled in this State that the sole question to be determined on appeal in the granting or refusing of a temporary injunction, is whether or not the trial court abused its discretion in entering the order appealed from."

■ Courts have uniformly held that abuse of discretion may be found only when the record reflects that the findings of the trial court necessary to sustain its order are not supported by some evidence of a substantial and probative character. Frank v. Weiner, Tex.Civ.App., Galveston, 1950, 229 S.W.2d 186.

■ Our review of this case on this appeal from the temporary injunction granted by the trial court does not extend to or include in its purpose the making of independent findings by this Court upon the three elements necessary to the issuance of such injunction as set forth in City of Baytown v. General Telephone Company of the Southwest, supra. That is exclusively the function of the trial court. Our review is limited to the determination of whether there is some evidence of a substantial and probative character to support the findings of the trial court. If such evidence is in the record, the findings of the trial court control. Only where no such evidence exists can this or any other appellate court hold that the trial court abused its discretion.

With the inquiry thus limited, it is thought that some discussion of the nature of the litigation resulting in this appeal will assist in applying the law to the evidence in the record here presented.

■■ Courts do not and cannot regulate rates of public utilities. That is exclusively and inherently a legislative prerogative. Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77; Missouri-Kansas & T. Ry. Co. v. Empire Express Company, Tex.Com. App., 221 S.W. 590. Except as limited by fundamental law this power of the legislature is absolute and free of any interference from other branches of our government. The fundamental law which limits the legislative power to regulate utility rates is that portion of the Fifth Amendment of the Constitution of the United States, which provides that no person shall be deprived of life, liberty or property without due process of law. Insofar as utility rates are concerned, the Supreme Court of the United States has held that the due process clause of the Constitution prohibits rate legislation which deprives the utility of a fair or reasonable return on the fair value of the property being used to render public service. Southwestern Bell Telephone Co. v. Public Service Commission of Missouri, 262 U.S. 276, 43 S.Ct. 544, 67 L.Ed. 981; United Gas Public Service Company v. Texas, 303 U.S. 123, 625, 58 S.Ct. 483, 82 L.Ed. 702; Lone Star Gas Co. v. Texas, 304 U.S. 224, 58 S.Ct. 883, 82 L.Ed. 1304. It is only where the contention is made that rate legislation is violative of this constitutional prohibition that injunctive relief can be sought in our courts. In Texas the power to regulate rates of public utilities has been expressly delegated by the Legislature to city commissions and councils subject to

conditions prescribed by state statutes, principally Arts. 1175 and 1124, Revised Civil Statutes of Texas.

In the present case there is not involved the question of what rate the appellee should charge. That issue is not raised by the pleadings nor comprehended in the judgment of the court. Solely involved is the question of whether the ordinance of the City of Houston, dated December 1, 1949, provides a schedule of rates which deprives appellee of a fair or reasonable return on the fair value of its property being used to render public service and is thus violative of the United States Constitution as interpreted by the Supreme Court of the United States and of this State.

Therefore, it is apparent that the first requirement set forth in City of Baytown v. General Telephone Company of the Southwest for the issuance of a temporary injunction, namely that there is a reasonable probability that the utility will succeed on final hearing, does not mean that it must be made to appear that the utility will probably show itself entitled to that rate to which it says it is entitled, or to any other particular rate. It means only that it must appear that the utility will probably succeed in proving that the rates provided by the December 1, 1949 ordinance deprive it of a fair or reasonable return on the fair value of the property being used to render public service, or, in other words, that it is entitled under the law to some rate higher than that provided by such ordinance. The trial court found that the appellee had made such showing. It is our undertaking in this review not to decide whether or not appellee made such a showing but only to determine whether the record contains some evidence of a substantial and probative character to support the trial court's finding.

 Appellants attack the judgment of the trial court in 11 asserted points of error. By their first point they say that the appellee wholly failed to show that there was a reasonable probability that the appellee would succeed on final hearing. We overrule this point. Appellants' contention, that the rules enunciated in City of Baytown v. General Telephone Company of the Southwest have no application because in that case the appealing City of Baytown offered no evidence in the trial court, is without merit. The total lack of evidence refuting the utility's contentions in that case made more simple the determination of whether the trial court's findings were supported by evidence of substantial character, but it was not that lack of evidence which gave rise to the stated rules. From the fact that the evidence here offered by appellee was strongly contested and disputed by appellant, it does not follow that the evidence offered by appellee was not of substantial or probative character. We feel that any impartial examiner reviewing the record of the evidence offered before the trial court, even though he might reach a conclusion different from that reached by the trial court, would be forced to acknowledge that the record contains some evidence of substantial and probative character supporting the trial court's finding, and that acknowledgment would be determinative of the question of abuse of discretion. Appellants' fourth and fifth points, although in different language, assert the same error and are likewise overruled. The presumptions in favor of the validity of the ordinance of the City of Houston do not require that appellee prove its right to recovery by clear and conclusive proof as contended by appellant in its points 2 and 3. The presumption merely places the burden of proof upon appellee. It does not increase that burden beyond the requirement that there be some evidence of substantial and probative character. The ordinance involved was passed by the appellant under its delegated legislative authority, therefore the substantial evidence rule lends no support to it. State v. Lone Star Gas Co., Tex.Com.App., 137 Tex. 279, 153 S.W.2d 681. Appellants' fifth point is, therefore, overruled.

The appellants' points of error which we have so far overruled are those directed to the finding of the trial court that there is a reasonable probability that appellee will succeed on final hearing. Appellants appear

to make no contention that the loss to appellee resulting from a refusal to grant the temporary injunction will be irreparable. The presence of that requirement is readily apparent. If upon final hearing it is determined that appellee is correct in its contention that it is entitled to a higher rate than that provided for in the city's ordinance and in the meantime it be compelled by the refusal of a temporary injunction to furnish services at the ordinance rates, it would, during such interim, have been deprived of its property without due process of law, which our Constitution forbids. The record discloses that its subscribers number several hundred thousands. Upon the final passage of an ordinance providing an adequate rate, appellee, insofar as the loss already then suffered is concerned, would be in that position wherein not only does the law afford no adequate remedy but any remedy, even if available, would patently be impracticable if not impossible of enforcement.

It remains, therefore, only to determine whether the record supports the finding of the trial court that the third requirement is present, namely that the customers can be adequately protected by bond. The trial court's finding is attacked by appellants in their points 7 and 9.

 The trial court required, and appellee posted, a bond in the sum of $12,000,000. Its condition is that if the temporary injunction be dissolved in whole or in part appellee will promptly pay back to its customers the excess, if any, of the rates which appellee shall collect under the protection of the temporary injunction over and above the rates which are finally determined to be just and reasonable. We find no abuse of discretion on the part of the trial court. The bond appears to be ample in amount and properly conditioned. Furthermore, since the injunction is interlocutory, it remains in the trial court's discretion to change the bond requirements either in amount or condition upon the motion of either party or upon his own motion. The failure of the bond to provide for the payment of interest on the excess, if any, does not prejudice the right of appellants to collect interest if it is ultimately determined to have been due and the amount of the bond is ample to secure its payment. In City of Baytown v. General Telephone Company of the Southwest, Judge Monteith held that under such a bond no customer can be injured. We hold that at most any injury can consist only of temporary inconvenience and some possible temporary hardship. However, in view of its temporary character and the adequate provision for its ultimate rectification, such injury is minor by comparison to the irreparable injury which appellee would otherwise suffer. In the case of Prendergast v. New York Telephone Company, 262 U.S. 43, 43 S.Ct. 466, 469, 67 L.Ed. 853, the Supreme Court of the United States made the following statement: "Upon a showing that such reduced rates were confiscatory the Company was entitled to have their enforcement enjoined pending the continuance and completion of the rate-making process. * * * Especially will the granting of the temporary writ be upheld, when the balance of injury as between the parties favors its issue."

Appellants in their eighth point complain that the order changes the status quo. The authorities already discussed held that the status quo to be preserved is that status which does not deprive appellee of its property without due process of law. These same authorities, as well as Gulf, C. & S. F. R. R. Co. v. Railroad Commission of Texas, 102 Tex. 338, 116 S.W. 795, by the Supreme Court of Texas, as well as many others, support the jurisdiction of the court to issue the temporary injunction and adequately dispose of the error asserted by the appellants in points 10 and 11.

The record reflects that every finding of the trial court necessary to support its judgment is supported by evidence of substantial and probative character, and that judgment is, accordingly, affirmed.

CODY, J., not sitting.