WINNIPEG RUGBY FOOTBALL CLUB, Limited, Plaintiff,

v.

Robert Clayton FREEMAN, and Cleveland Browns, Inc., Defendants.

WINNIPEG RUGBY FOOTBALL CLUB, Limited, Plaintiff,

v.

Jack LOCKLEAR, Jr. and Cleveland Browns, Inc., Defendants.

Civ. Nos. 31980, 31981.

United States District Court N. D. Ohio, E. D.

Aug. 15, 1955.

Theo. C. Robinson, McCreary, Hinslea & Ray, Cleveland, Ohio, for plaintiff.

Morris Berick, Elmer E. McNulty, Halle, Haber, Berick & McNulty, Cleveland, Ohio, for defendants.

JONES, Chief Judge.

The plaintiff, Winnipeg Rugby Football Club, Ltd., filed like complaints against each defendant player seeking to enjoin them from playing football with the defendant Cleveland Browns during the current season. Plaintiff also filed motions for preliminary injunctions which were heard upon affidavits and oral testimony taken in open court.

The basis of the plaintiff's suit is that the defendant players signed contracts on January 8, 1955, to play with the Winnipeg team effective until the first day of June following the close of the football season commencing in 1955, which contracts contained provisions, among others, that the defendants had special skills and unique ability and that they would not during the life of the contract play with any other team. The defendants breached the contracts by signing up with the Browns on February 6, 1955 and joining that team for preliminary practice in July; and they thereupon expressly refused to report to the plaintiff's Club.

Although the defendant player Freeman signed an affidavit which was presented and filed, he did not appear, or at least was not called to take the stand for oral examination. It was stated in an affidavit of Paul Brown for the defendant that Locklear was physically incapacitated and no affidavit was signed by him and he did not appear at the hearing.

It must be found from the evidence that these were valid contracts and binding upon the defendant players unless by

law and fact they may not be held to the negative provisions which otherwise would prevent their playing with the Browns or any other Club during the life of the Winnipeg contracts.

There are a few certain key cases which have been controlling authority in controversies of this character. If the present facts fit into the essentials for injunctive relief the plaintiff should prevail.

Starting with Lumley v. Guye, 118 Eng.Reprint 749 and Lumley v. Wagner, 42 Eng.Reprint 687, continuing with the principles there set down through the Philadelphia Ball Club v. Lajoie case, 202 Pa. 210, 51 A. 973, 58 L.R.A. 227 and Warner Bros. Pictures, Inc. v. Nelson (Bette Davis), [1937] 1 K.B. 209, [1936] 3 All.E.R. 160, and other cases we finally find, for us, authoritative pronouncement approving the principles of such cases in our own Court of Appeals in Bach v. Friden Calculating Mach. Co., 6 Cir., 155 F.2d 361, at page 366. Thus it will be found that these principles effectively apply to such contracts as are here under consideration in view of the fact that the law of Manitoba which controls is conceded to be the same as would apply in a like case here.

Are the essentials present here to support injunctive relief as prayed? It is my considered judgment that they are and I so find the facts and circumstances in evidence responding to those essential requirements.

The contracts were for services of special merit; they were of peculiar and particular value to the plaintiff; there was a covenant against playing for anyone else; damages in case of breach were incapable of definite measurement; the plaintiff is willing and able to fulfil its part of the contract. See McCaull v. Braham, C.C., 16 F. 37, 40; Keith v. Kellermann, C.C., 169 F. 196, 200.

Ordinarily and under disinterested circumstances I would give great weight to the judgment of Coach Brown as to the value of a football player. He testified that the two defendants only were

"good" football players but not specially skilled, although the consideration for their contracts with the Browns seemed to me to recognize in them (especially Freeman) rather promising talent of something more than ordinary skill for a beginner in professional football (although they had to make the team to get the consideration called for by those contracts).

Common knowledge among football fans probably would support the testimony of Coach Brown that it is quite a jump from college to professional football, and many college stars are not immediately successful,—and some never, in meeting the competition of the professional game as currently played in the National League. While it also is a fact that the skill and ability of college football players ordinarily improves with experience in professional play, nevertheless, it also is recognized that some college players who exhibit special skill and unique ability in college immediately upon entering professional play exhibit such skill and outstanding ability. The standard of special skill and exceptional ability to some extent must have a relation to the class and character of play.

In view of the acknowledged difference between college and professional football, and even between the Canadian League and the current National League, it seems reasonable to observe that appraisal of skill and unique ability of a player, as they relate to contracts of this type, must depend somewhat upon his prospects and potential. Otherwise, such a contract with a college football player seldom would stand up for the professional club that first signed him.

I am satisfied that to the Winnipeg Club and for the character of the game as played in the Canadian League (Coach Sherman did not think his League in a class with the National League), that the two players had special skills and exceptional ability. Thus, as it seems to me, the evidence of the defendant's witness as an acknowledged judge of football talent is not sufficient to overcome the persuasive evi-

dence in support of the plaintiff's claim that these two defendant players, for the purposes of the plaintiff's Club and the character of the game in its League, had special skill and exceptional ability for their respective positions and were of peculiar value to the Winnipeg Club.

It was in evidence that plaintiff was unable to secure the services of players of equal or comparable skill and ability. Particularly was it testified that the plaintiff's game for 1955 was planned and built upon the exceptional skill and ability of defendant Freeman as quarterback.

I am not unmindful of the character and requirement of proof to justify the intervention of the equity arm of the court in granting the extraordinary relief of preliminary injunction in cases such as the one before me, but I am convinced that the nature of the contracts and the absence of an adequate remedy at law in damages as for breach of contract call for the relief sought under the facts before me on affidavits and oral testimony.

Other defenses advanced such as lack of jurisdictional amount; unclean hands, and unfairness in securing defendant Freeman's signature to the contract have been carefully considered but are found not established and not fatal to the relief prayed. Canadian cases referred to by defendants are not apposite or controlling; nor were they decided upon the precise issues presented here.

Although the player defendants signed contracts with the Browns February 6, 1955, they led Winnipeg to believe that they intended to fulfil their contracts until about July 14th when they first notified Winnipeg that they would like to try out with the Browns. Such conduct, in the nature of things, contributed further to prevent the plaintiff from securing comparable replacements and thus aggravated the breach.

It is my considered judgment that the plaintiff would most likely prevail upon a final hearing on the merits and for this, as well as other reasons above stated, a preliminary injunction will be granted.

While the Browns' evidence was that they had no positive knowledge of the defendant players' contracts with the Winnipeg Club, yet they had heard statements and rumors to that effect, as I think, sufficient to put them upon inquiry and notice. The effect of having the players sign contracts to play with the Browns and in fact having them join the team for practice in such circumstances is to have participated in securing the breach of the plaintiff's contracts and accordingly should be made subject to injunctive process.