**DETROIT FOOTBALL COMPANY,**
Plaintiff

v.

**John ROBINSON, Defendant.**

Civ. A. No. 2312.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

June 29, 1960.

Lemle & Kelleher, Harry B. Kelleher, Carl J. Schumacher, Jr., New Orleans, La., and Monaghan & Monaghan & Crawmer, Detroit, Mich., for plaintiff.

Theo. F. Cangelosi, Paul M. Hebert, Baton Rouge, La., for defendant.

## J. SKELLY WRIGHT, District Judge.

This case is but another round in the sordid fight for football players, a fight which begins before these athletes enter college and follows them through their professional careers. It is a fight characterized by deception, double dealing, campus jumping, secret alumni subsidization, semi-professionalism and professionalism. It is a fight which has produced as part of its harvest this current rash of contract jumping suits.[1] It is a fight which so conditions the minds and hearts of these athletes that one day they can agree to play football for a stated amount for one group, only to repudiate that agreement the following day or whenever a better offer comes along. So it was with Johnny Robinson.

The basic facts of this affair are quickly stated. On December 2, 1959, Robinson was approached in Baton Rouge by the president of the Detroit Football Company and solicited to join the Lions for the 1960 season. He was offered a salary of $14,500, of which $2,500 would be advanced then and there and $1,000 would be paid on January 1. After some discussion, Robinson executed the tendered form, a "Standard Players Contract,"[2] and accepted the tendered advance, in currency. It was understood that in view of the forthcoming Sugar Bowl game, no public mention of the

arrangement would be made until after New Year's. Later in December, however, Robinson was contacted by a representative of the "Dallas Texans," a club in the new American Football League. A trip to Dallas followed swiftly and Robinson was persuaded to change his mind and sign up with the new team. On December 29 he so notified the Detroit Lions. He did not then return the cash advance he had received, and, about the first of the year, the remaining $1,000 was sent to him. Robinson's "contract" with the Detroit club was presented to the Commissioner of the National Football League on January 6, 1960, and approved by him on January 12 or thereabouts. Subsequently, on January 13, Robinson returned plaintiff's money. The club refused the tender and filed this proceeding to enforce what it says was Robinson's binding undertaking to play for the Lions and no one else.

The initial question is whether the instrument executed by Robinson on December 2 was, from that date, a binding contract, or merely an offer, revocable until approved by the League Commissioner. The mere fact that the Commissioner's signature was required does not necessarily resolve the issue in defendant's favor. For, of course, the immediate parties might legally bind themselves in a valid contract, though its enforceability would depend upon the occurrence of an event over which neither had final control. Thus, the Commissioner's approval might be deemed a mere *condition precedent to execution of the contract*,[3] or, in Louisiana civilian terms, a *suspensive condition* delaying the maturity of the reciprocal obligations.[4] On the other

---

1. Winnipeg Rugby Football Club v. Freeman, D.C.N.D.Ohio, 140 F.Supp. 365; Chicago Cardinals Football Club, Inc. v. Etcheverry, D.C.D.N.Mex., June 26, 1956 (unreported); Los Angeles Rams Football Club v. Cannon, D.C.S.D.Cal., 185 F. Supp. 717; New York Giants v. Los Angeles Chargers and Charles Flowers, D.C. N.D.Miss., June 23, 1960.

2. The printed form provides in paragraph 13: " * * * This agreement shall become valid and binding upon each par-

ty hereto only when, as and if it shall be approved by the Commissioner."

3. 3 Corbin, Contracts, § 649, pp. 587–589. See also, Restatement of the Law of Contracts, §§ 250, 262, Illustration 2.

4. LSA–C.C., Arts. 2021, 2025, 2028, 2043. The instrument in suit provides that Michigan law shall govern the agreement. However, insofar as concerns this case, Michigan law is the same as the law generally. See Wardell v. Williams, 62 Mich. 50, 28 N.W. 796; Brown v. Snider,

hand, the transaction can be viewed as an offer by Robinson to which the club responded by *conditioning its acceptance* on securing the Commissioner's approval, in which event no contract was formed on December 2.[5] In other words, securing the Commissioner's signature might be considered a condition *precedent to the very existence of a contract.*[6]

To determine which was intended, we must look to the instrument itself. As stated, it is there provided in paragraph 13:

"This agreement shall become valid and binding upon each party hereto only when, as and if it shall be approved by the Commissioner."

It is difficult to devise clearer language indicating that no valid or binding contract existed until after the required approval was secured.[7] We must conclude, as have others, interpreting the same clause,[8] that all Robinson executed was an offer which had not yet been unconditionally accepted by the Detroit Football Company when he withdrew it on December 29.

It is of course elementary law that an offer may normally be revoked at any time before it is effectively accepted by communicating notice of such a change of mind to the offeree.[9] The exceptions relating to situations in which the other party has been misled into "changing position" in reliance on a promise are not applicable here.[10] Robinson's failure to return the advance as promptly as he might cannot have prejudiced the Lions in view of his unequivocal communication indicating the revocation of his offer to play for that club. Nor did his initial acceptance of the money prevent his subsequent withdrawal, unless, of course, the advance be deemed consideration for an option granted. But that argument is not strongly pressed, nor could it be in the absence of an express stipulation. The club was not buying time in which to make up its mind. The $3,500 was not an *additional* bonus for holding an offer open. As the "contract" makes plain, it was an advance on his anticipated salary, and it must be viewed as given conditionally, on the contingency that a binding contract would later come into existence.

The conclusion, then, is that, despite its efforts to "sign up" this player, and "bait" him with twenty-five one-hundred-dollar bills, Detroit failed to land their fish. His struggle to wriggle off the hook has proved successful. But it might not be amiss to remind Robinson of what Judge Rogers said[11] to Sam Etcheverry in a similar case:

"* * * in four or five, six or eight years, some day your passes are going to wobble in the air, you are not going to find that receiver. If you keep playing around here, with these professionals, and others, and jumping your contracts—you are all right this time, * * * but * * * some day your abilities will

126 Mich. 198, 85 N.W. 570; Farmers' Handy Wagon Co. v. Newcomb, 192 Mich. 634, 159 N.W. 152; Thomas v. Ledger, 274 Mich. 16, 263 N.W. 783.

5. 1 Williston, Contracts (3rd Ed. 1957), §§ 77, 77A, pp. 251–257; 1 Corbin, Contracts, § 61, pp. 186–188; Restatement of the Law of Contracts, § 60; LSA–C.C., Art. 1805.

6. 3 Williston, Contracts (Rev.Ed.1936), §§ 666, 666A, pp. 1911–1913; Restatement of the Law of Contracts, § 250, Comments a and b.

7. Contrast provisions stating that the agreement "shall become *effective*" upon obtaining the approval of a third person and that "in the event such approval be not obtained, the agreement shall be null and void," as in Watson Bros. Transp. Co. v. Jaffa, 8 Cir., 143 F.2d 340, 342.

8. Chicago Cardinals Football Club, Inc. v. Etcheverry, supra; Los Angeles Rams Football Club v. Cannon, supra; New York Giants v. Los Angeles Chargers and Charles Flowers, supra.

9. Williston, Contracts (3rd Ed. 1957), § 55, pp. 176 ff.; 1 Corbin, Contracts, § 38, pp. 117 ff.; Restatement of the Law of Contracts, § 35(1) (e), p. 41; LSA–C.C., Arts. 1800, 1804.

10. See, e. g., Winnipeg Rugby Football Club v. Freeman, supra.

11. Chicago Cardinals Football Club, Inc. v. Etcheverry, supra.

be such that [your club] won't even send a twice disbarred attorney from Dogpatch to help you. They sent some dandy ones this time, * *."

Judgment accordingly.