DALLAS COWBOYS FOOTBALL CLUB, INC., Appellant,

v.

James B. HARRIS, Appellee.

Nos. 15849, 15891.

Court of Civil Appeals of Texas.

Dallas.

May 26, 1961.

Rehearing Denied June 23, 1961.

Wynne & Wynne, Dallas, for appellant.

Lyne, Blanchette, Smith & Shelton, Dallas, for appellee.

DIXON, Chief Justice.

Preliminary Statement

Appellant Dallas Cowboys Football Club, Inc., hereinafter called the Club, a member

of the National Football League, brought this action against James B. Harris for injunction to restrain Harris from playing professional football, or engaging in any activities related to professional football for anyone except the Club. Appellant alleged that Harris was bound by the terms of a written contract to play football for the Club and no one else, but that in violation of his contract he was playing football for the Dallas Texans Football Club, a member of the American Football League. The suit was for injunction only. No money judgment was sought.

After hearing and upon execution of $15,000 injunction bond a temporary injunction was granted to the Club on July 29, 1960. Harris took an appeal from this temporary order.

Meantime the trial court had reached the main suit for trial on the merits, and on September 21, 1960, following return of a jury verdict favorable to Harris, had rendered judgment that the Club take nothing by its suit against Harris. The Club took an appeal from the judgment on the merits.

The result was that when the appeal from the temporary injunction order was reached by us for submission on October 27, 1960 the case had already been tried on its merits, judgment on the merits had been entered by the trial court denying the Club a permanent injunction, and the Club's appeal from the judgment on the merits had been perfected by the filing of a cost and supersedeas bond in the amount of $30,000.

Prior to submission of his appeal from the temporary order, Harris filed a motion to dismiss his appeal on the ground that said appeal had become moot, as the temporary injunction had necessarily been dissolved by the entry of the judgment on the merits denying the Club a permanent injunction. In support of his motion Harris cited, among others, the case of Fort Worth Street Ry. Co. v. Rosedale Street Ry. Co., 68 Tex. 163, 7 S.W. 381, 383.

On October 24, 1960 we overruled Harris' motion to dismiss his appeal. In an un-published opinion we distinguished the cases relied on by Harris from the case presented to us by his appeal. For example we pointed out that in the Fort Worth Ry. Co. case, supra, the temporary injunction had expired by its own terms regardless of the entry of judgment on the merits. The temporary order in that case expressly provided that the temporary injunction "remain in force and effect *only until the hearing* of this case is had * * *." (Emphasis ours).

The temporary order in this case is quite different. It provides that the injunction shall issue *"pending final hearing and determination* of this cause, * * *." (Emphasis ours). The temporary injunction did not expire under its own terms, but remained in effect pending final determination, which means final determination on appeal.

In the absence of an appeal and supersedeas the judgment on the merits by the trial court would undoubtedly have been a final determination and would have had the legal effect of dissolving the temporary injunction. But the judgment on the merits was superseded. The supersedeas bond in favor of Harris in the amount of $30,000 is conditioned that the Club will "prosecute its appeal with effect" and will perform the judgment in case the "judgment of the Supreme Court or the Court of Civil Appeals shall be against it." In overruling Harris' motion to dismiss we cited Williams v. Pouns, 48 Tex. 141; Gulf C. & S. F. Ry. Co., v. Fort Worth & N. O. Ry. Co., 68 Tex. 98, 2 S.W. 199, 3 S.W. 564; Williams v. Williams, 60 Tex.Civ.App. 179, 125 S. W. 937, 940; Bagby v. Bagby, Tex.Civ. App., 186 S.W.2d 702, 708; Quarture, et ux. v. Allegheny County et al., 141 Pa. Super. 356, 14 A.2d 575, 578; Sinking Spring Water Co. v. Gring, 257 Pa. 340, 101 A. 732; and Davies v. Fidelity & Deposit Co. of Maryland, 93 Cal.App.2d 13, 208 P.2d 414, 416.

After overruling Harris' motion to dismiss his appeal from the temporary injunc-

tion we went on to consider the appeal itself. On November 4, 1960, we reversed the trial court's order and rendered judgment denying the Club a temporary injunction. In its motion for rehearing the Club contended that we had misinterpreted some of the testimony reproduced in the statement of facts filed in the temporary order appeal. In support of its contention the Club cited and quoted from the amplified testimony reproduced in the statement of facts filed in the appeal from the judgment on the merits, which statement of facts by that time had been filed in this Court.

On examination of the whole record of both appeals we concluded that we probably had made a mistake and that the evidence in the second statement of facts shed a different light on some of the fact situations.

Consequently, on December 30, 1960 we sustained the Club's motion for rehearing, set aside our decision and withdrew our opinion in which we had reversed and rendered the trial court's order granting the Club a temporary injunction. At the same time we entered an order consolidating the two appeals. See Lewisville & N. O. Ry. Co. v. Paul's Administration, 314 Ky. 473, 235 S.W.2d 787; Neuman & Kirmse v. Vogelsang, Tex.Civ.App., 236 S.W. 128; Nixon v. Malone, Tex.Civ.App., 95 S.W. 577, 584; 4 Tex.Jur.2d 225; 5 C.J.S. Appeal and Error § 1402, p. 532. Thereafter, the consolidated appeals were duly submitted and are now before us for determination. We shall first consider the appeal from the judgment denying the Club a permanent injunction.

### Club's Appeal from Judgment on Merits

In June 1958 James B. Harris for a consideration of $8,000 signed a contract to play football and to engage in activities related to football only for the Los Angeles Rams Football Club, a member of the National Football League. This contract covered a period of time beginning with the execution of the contract and extending to the first day of May following the 1958 football season, which latter date was May 1, 1959. The contract also included a clause providing that the Club at its option might renew the contract for an additional year.

Both Harris and the Los Angeles Rams Football Club performed the primary contract which by its terms expired May 1, 1959. A controversy arose between the parties with reference, among other things, to the exercise by the Los Angeles Rams Club of its option on Harris' services for another year. As a result Harris chose not to play professional football during the 1959 season. Instead he reentered the University of Oklahoma as a student and also accepted a position as assistant football coach at the University.

In April 1960 Harris signed a contract to play football during the 1960 season for the Dallas Texans Football Club of the newly organized American Football League.

Harris' contract with the Los Angeles Rams was by its terms assignable. On July 22, 1960 the contract was assigned to the Dallas Cowboys Football Club, Inc., a new member of the National Football League. On the same date this suit was instituted against Harris by the latter Club to restrain Harris from playing football for anyone except the Club.

Since the Club contends that Harris, as a matter of law, is bound by the terms of the 1958 contract and its option to play football only for the Club for an additional year, we deem it advisable to reproduce material parts of the contract:

"2. The player agrees during the term of this contract he will play football and will engage in activities related to football only for the Club and as directed by the Club * *. * . *.

"3. For the Player's services * *, and for his agreement not to play football or engage in activities related to football for any other person, firm, corporation or institution during the term of this contract, and for the option hereinafter set forth * * *. the Club

promises to pay the Player * * * the sum of $8,000.00.

"5. The Player promises and agrees that during the term of this contract he will not play football or engage in activities related to football for any other person, firm, corporation or institution except with the prior written consent of the Club and the Commissioner, * * *.

"8. The Player hereby represents that he has special, exceptional and unique knowledge, skill and ability as a football player, the loss of which cannot be estimated with any certainty and cannot be fairly or adequately compensated by damages and therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunction proceedings against playing football or engaging in activities related to football for any person, firm, corporation or institution and against any other breach of this contract * * *.

"10. On or before the date of expiration of this contract, the Club may, upon notice in writing to the Player, renew this contract for a further term until the first day of May following said expiration on the same terms as are provided by this contract, except that (1) the Club may fix the rate of compensation to be paid by the Club to the Player during said period of renewal, which compensation shall not be less than ninety percent (90%) of the amount paid by the Club to the Player during the preceding season, and (2) after such renewal this contract shall not include a further option to the Club to renew the contract; * * *

"Should Player * * * retire from football prior to the expiration of this contract or any option contained herein, and subsequently * * * return to professional football, then * * * the time elapsed between * * * his re-tiring from professional football and his return thereto, shall be considered as tolled, and the term of his contract shall be considered as extended for a period beginning with the player's * * return to professional football * * * and ending after a period of time equal to the portion of the term of this contract which was unexpired at the time the Player * * * retired from professional football; and the option contained herein shall be considered as continuously in effect from the date of this contract until the end of such extended term."

Appellant Club, in eight points on appeal, asserts in substance that there were no fact issues to be submitted to the jury and that the Club was entitled, as a matter of law, to the injunctive relief for which it prayed; therefore it was error to submit Special Issue No. 1 to the jury, and it was error for the court to overrule the Club's motions for summary judgment, for instructed verdict and for judgment non obstante veredicto.

 It is well established in this State and other jurisdictions that injunctive relief will be granted to restrain violation by an employee of negative covenants in a personal service contract if the employee is a person of exceptional and unique knowledge, skill and ability in performing the service called for in the contract. Mission Independent School Dist. v. Diserens, 144 Tex. 107, 188 S.W.2d 568, 161 A.L.R. 877; Winnipeg Rugby Football Club v. Freeman, D.C., 140 F.Supp. 365; Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 58 L. R.A. 227; 21–A Tex.Jur. 146; 43 C.J.S., Injunctions § 82, pp. 560–564.

 But in this case there is a fact finding by a jury in answer to Special Issue No. 1 to the effect that at the time of the trial Harris did *not* have exceptional and unique knowledge, skill and ability as a football player. If the record reveals any evidence of probative force in support of this finding it was not error for the court to submit Special Issue No. 1 to the jury,

nor was it error to overrule the Club's motions for summary judgment, directed verdict and judgment non obstante veredicto. White v. White, 141 Tex. 328, 172 S.W.2d 295; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199; Maxey Lumber Co. v. De-Graw, Tex.Civ.App., 278 S.W.2d 607; Penn v. .Garabed Gulbenkian, Tex.Civ.App., 243 S.W.2d 220, affirmed 151 Tex. 412, 252 S.W.2d 929; Wilkinson v. Lindsey, Tex.Civ.App., 321 S.W.2d 158, 164. If an issue of fact is raised by the evidence, it must go to the jury, though a verdict based on such evidence would have to be set aside as not supported by sufficient evidence. Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S.W. 399; Maryland Casualty Co. v. Morua, Tex.Civ.App., 180 S.W.2d 194. The last named rule also has support in some decisions from other jurisdictions. McDonald v. Metropolitan St. Ry. Co., 167 N.Y. 66, 60 N.E. 282; Sharp v. Supreme Council of Royal Arcanum, Mo.App., 251 S.W. 159; Adams v. United States, 7 Cir., 116 F.2d 199, 202.

■ In one of its points the Club takes the position that Harris by the express representations contained in his contract is estopped, as a matter of law, from disputing the fact that he possesses exceptional and unique knowledge, skill and ability as a football player.

We see no merit in the Club's claim of estoppel. We think the rule applicable here is stated correctly in 31 C.J.S. Estoppel § 79, p. 288: "To create an estoppel the representation relied on must be a statement of a material fact, and not a mere expression of opinion." See also Petit v. Klinke, 152 Tex. 142, 254 S.W.2d 769.

The part of the contract above referred to and relied on by the Club is properly to be interpreted as an expression of opinion by Harris of his own capabilities. In this connection the testimony of Tom Landry, Head Coach of the Club, is of interest. We quote from his testimony:

"Q. * * * Paragraph 8 of the Plaintiff's contract says: 'Player here-by represents he has special, exceptional and unique knowledge and skill and ability as a football player. * * ? A. Well, I think the boy probably represents himself as being unique in that respect. Now, maybe he is not the best judge of his ability. Q. Well, whether or not a man is unique is a matter of opinion, isn't it? A. I think that is probably true as far as forming a conclusion; yes.'"

The record discloses that appellee Harris himself on cross-examination testified that he *thought* he had a certain amount of unique skill and ability.

But later a definition of the word "unique" was introduced without objection from appellant and in that connection Harris then testified as follows:

"Q. Now, have you looked up the definition of 'unique' in the dictionary? A. No, sir; I haven't.

"Q. Well, I am reading from the New Century Dictionary here, and it says: 'Of which there is but one, or sole, or only'; Do you think you are the only defensive halfback? A. Not by any means of the imagination.

"Q. It says, 'Unparalleled, or unequal'—you think you are unparalleled or unequal? A. I wish I were, now.

"Q. Do you think you are? A. No, sir; I am not. I know my own ability.

"Q. It says, 'something of which there is only one'; are you the only defensive halfback? A. No. I am not.

"Q. 'Something without parallel or equal of its kind'; are you that kind of defensive halfback? A. No. I wish I was."

■ In view of the above testimony we are unable to agree with appellant Club that there is no evidence in the record of probative force to support the fact finding of the jury to the effect that Harris did not

have exceptional and unique knowledge, skill and ability as a football player. Certainly we may not ignore the testimony, especially in view of the fact that it was admitted without objection. Winkler v. Cox, Tex.Civ.App., 243 S.W.2d 248. We overrule the Club's eight points on appeal in so far as they assert that the Club, under the record before us, was entitled to injunctive relief as a matter of law and that it was error for the court to submit Special Issue No. 1 and to overrule the motions for summary judgment, directed verdict and judgment non obstante veredicto.

Among the several grounds of error urged by the Club in its sixth point on appeal was this: 'the court erred in refusing to grant a new trial because the great weight and preponderance of the evidence showed that Harris did possess special, exceptional and unique knowledge, skill and ability as a football player, contrary to the answer of the jury.

This point spotlights once more the difference between the "no evidence" rule and the "insufficient evidence" rule. We shall not enter upon a detailed explanation of this difference. It is explained in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 and is discussed by Chief Justice Calvert in an article in 38 Tex.Law Review, 361, April 1960.

As we said in substance earlier in this opinion, though there may be some evidence in the record which raises a fact issue necessitating the submission of the case to the jury, nevertheless it may be the duty of the court afterwards to grant a new trial if the record evidence is "insufficient" to support the jury verdict, that is, if the evidence is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

We think that is true in this case. The definition of the word "unique" intro-

duced in evidence was too narrow and limited.* We agree with the statement in Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 58 L.R.A. 227, as follows:

"We think, however, that in refusing relief unless the defendant's services were shown to be of such a character as to render it impossible to replace him he has taken extreme ground. It seems to us that a more just and equitable rule is laid down in Pom.Spec.Perf. p. 31, where the principle is thus declared: 'Where one person agrees to render personal services to another, which requires and presuppose a special knowledge skill, and ability in the employe, so that in case of a default *the same service could not easily* be obtained from others, * * * its performance will be negatively enforced by enjoining its breach * * *' We have not found any case going to the [same] length of requiring, as a condition of relief, proof of the impossibility of obtaining equivalent service." (Emphasis ours).

After a careful study of all the record evidence in this case we are of the opinion that the evidence is "insufficient" to support the jury finding.

All of those witnesses, whose testimony has any bearing on the question testified very positively that Harris was possessed of unique skill and ability. Prior to the introduction of the narrow and limited definition of "unique" Harris himself testified as follows:

"Q. Jimmy, you signed contracts with both of them in which you represented that you did have unique skill and ability, didn't you? A. I thought I did.

"Q. Well, you know that is in both of the contracts, don't you? A. That's right.

---

* Appellant's counsel quoted only part of the definition of the word "unique" as the definition appears in the "New Century Dictionary". The complete definition includes this also: " * * * loosely, rare or unusual * * *."

"Q. * * * Then you know you do have unique skill and ability, don't you? A. I think I have a certain amount; yes.

"Q. * * * You yourself told both clubs in your written contracts that you did have skill and ability, didn't you? A. That's right.

"Q. * * * you now tell this jury that you have got that skill and ability, don't you? A. Right."

We also quote from the testimony of Don Rossi, General Manager of the Dallas Texans Football Club, who was a witness for Harris:

"Q. * * * In your opinion, Mr. Rossi, he does have exceptional skill and ability, doesn't he? A. Yes, sir. * * *

"Q. Well, haven't you already testified that he was above the average? A. Well, yes, sir; average or above average.

"Q. That's right. A. Well, we will go along with that.

"Q. Well, he is above average, isn't he? A. We will buy that.

"Q. * * * no buy it; you are just swearing to it? A. Yes sir."

The testimony of Schramm and Landry was even more positive. It is true that the witnesses named other professional football players who are "equal or better" than Harris as players, but the testimony was that players of Harris' ability were not available to the Club.

We sustain that part of the Club's sixth point on appeal wherein the Club asserts error in the court's refusing to grant a new trial because the great weight and preponderance of the evidence clearly showed that Harris did possess special, exceptional and unique knowledge, skill and ability as a football player, contrary to the answers of the jury.

In three cross-points Harris says that even if we set aside the jury's finding the injunctive relief sought by the Club should be denied as a matter of law because (1) the contract was invalid not having been formed by a proper offer and acceptance; (2) the contract was not valid, having expired by its own terms, and (3) Harris had not retired from activities related to football.

■ We have concluded that these cross-points should be overruled. On April 15, 1959 the Los Angeles Rams Football Club, referring to the 1958 contract, wrote to Harris as follows:

"This is to advise you that, in accordance with Paragraph 10 of said contract, the Los Angeles Rams Football Club hereby notifies you that it exercises its option and hereby renews said contract for your services for a further term until the first day of May 1960."

The above notification constitutes an unqualified, absolute and unambiguous exercise by the Club of its option under the terms of the original contract. Vratis v. Baxter, Tex.Civ.App., 315 S.W.2d 331, 337; 91 C.J.S. Vendor and Purchaser § 10, p. 853.

■ Harris claims that it was not a valid exercise of the option because the Club at the time or about the time it undertook to exercise its option tendered Harris a renewal contract which itself contained an option clause, although the original contract expressly provided that the renewal contract should not contain an option clause; therefore the attempted exercise of the option was not an unqualified compliance with the terms of the original option clause.

In our first consideration of Harris' appeal from a temporary injunction it seemed to us that the evidence showed that simultaneously with and as part of the exercise of its option the Club had tendered Harris a

renewal contract which did include another option clause. However, a later study of the enlarged and amplified statement of facts shows that a separate contract, not a renewal contract under the terms of the option, was offered to Harris *after* the Club had exercised its option. We quote from Harris' testimony on the point:

"Q. * * * You did receive that letter exercising the option? A. They exercised it as far as I could see.

"Q. That's right. A. That's right.

"Q. They exercised their option? A. That's right, yes. * * *

"Q. Yes. *It was after the option was sent you that you say they sent you a contract? A. That's right.* (Emphasis ours).

Certainly after one party has exercised his option under an existing contract, it is not illegal or improper for the parties to enter upon negotiations looking to the possibility of the execution of a new, separate and different contract, not entered into as a part of the original option agreement. We find nothing in the record that would justify our holding as a matter of law that the Club by later proposing a new and different contract had waived or abandoned its earlier exercise of its option under the first contract. Harris' first cross-point is overruled.

■ Harris says that by a clear and literal reading of the contract itself, it is at once apparent that the option could run only to May 1, 1960, and no further. We do not agree with Harris. In an earlier part of this opinion we quoted several paragraphs of the contract. The last of the quoted paragraphs provides that the running of time on the option agreement should be tolled between the time of Harris' "retiring from professional football and his return thereto * * *." Because of this provision we hold that the option agreement did not expire May 1, 1960. Harris' second cross-point is overruled.

■ However Harris claims that he did not retire from activities related to football, consequently the running of time on the option clause was not tolled. It is undisputed that Harris did not play professional football at all during the season of 1959–1960. During that year he was a student at the University of Oklahoma completing his work for degrees in history and geology; and he was also employed as an assistant coach of football. During that period he must be considered as having retired from professional football. Under the terms of his contract the running of time on the option agreement was tolled during his retirement. We overrule Harris' third cross-point.

## Harris' Appeal from Temporary Injunction

In his appeal from the order granting the Club a temporary injunction, Harris in eight points on appeal says that the trial court erred in granting the temporary injunction because (1) the effect was to disturb the status quo rather than maintain it, (2) the Club was thereby afforded all the relief to which it would be entitled upon a final hearing of the case, (3) the contract had expired under its own terms, (4) the contract is void on its face as being in violation of the anti-trust laws of the State of Texas and of the United States, (5) the contract sued on is unreasonable, harsh and unenforceable in equity, and, further, (6) it was error for the court to admit in evidence Exhibit No. 1 (copy of contract), as the very terms of said instrument show that it is not a complete contract and (7) said instrument was merely a carbon copy of the original contract, so was not the best evidence, and still further (8) it was error to admit in evidence Exhibit No. 6 (the assignment of Harris' contract, or "trade agreement") which was merely a carbon copy of the original trade agreement so was not the best evidence.

■ The last actual peaceable non-contested status which preceded this contro-

versy was that the Los Angeles Rams Football Club had exercised its option for Harris' services which option was later tolled by Harris' retirement from professional football for the season of 1959–1960. Harris himself admitted that he had entered into the original contract in good faith and that he considered the option had been exercised. The trial court did not disturb the status quo by granting the temporary injunction. Miller v. Textsteam Corp., Tex. Civ.App., 327 S.W.2d 465; Rattikin Title Co. v. Grievance Committee, Tex.Civ.App., 272 S.W.2d 948.

■ The granting of the temporary injunction did not conclude the controversial issues between these litigants or afford the Club all the relief it could obtain in a trial on the merits. The right of Harris to play professional football for the Dallas Texans Football Club or anyone else after this suit is concluded on its merits will remain unimpaired if Harris should prevail in the trial on the merits. And the Club and its sureties must then answer in damages for the time Harris may have been wrongfully restrained from playing professional football for anyone except the Club. We see no abuse of the court's discretion in granting the temporary injunction. Railroad Commission v. Shell Oil Co., 146 Tex. 286, 206 S.W.2d 235, 242; Southwestern Greyhound Lines v. R. R. Commission, 128 Tex. 560, 99 S.W.2d 263, 270, 109 A.L.R. 1235; Long Island American Ass'n Football Club, Inc., v. Manrodt et al., Sup., 23 N.Y.S.2d 858.

We have held in our opinion on the appeal from the judgment on the merits that the contract had not expired under its own terms, so we shall not further discuss that point.

■ The contract sued on here does not violate the anti-trust laws of the State of Texas and of the United States. It is true that in Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed. 2d 456 the Supreme Court of the United States held that organized professional football is a business and is interstate commerce, therefore it comes within the scope of the Sherman Anti-Trust Act, 15 U.S. C.A. § 1 et seq. But the allegations of Radovich were that he was the victim of a conspiracy whereby he was black-listed with the result that he was prevented from entering into any contract of employment in organized professional football.

Here the situation is quite different. Harris is not being black-listed or boycotted. Quite the contrary, at least two professional football teams are eager to employ his services. His trouble is that he has personally signed contracts with both of them and the only difficulty is to determine under which of them Harris is obligated.

■ We cannot support Harris' contention that the contract is so unreasonable and harsh as to be unenforceable in equity. Holdings to the contrary have been made in regard to similar contracts. Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 58 L.R.A. 227; Shubert Theatrical Co. v. Rath, 2 Cir., 271 F. 827, 837, 20 A.L.R. 846; Winnipeg Rugby Football Club v. Freeman, D.C., 140 F.Supp. 365, 367.

■ It was not reversible error under the circumstances to admit in evidence the copies of the original contract and the agreement to assign the contract, or to "trade" Harris. There is no issue in this case as to the terms of the contract, nor is it disputed that the Harris contract was assigned by the Los Angeles Rams Football Club to the Club. The error, if there was error, in admitting Exhibits Nos. 1 and 6 into evidence was harmless error.

Harris' eight points on appeal are overruled.

The judgment on the merits to the effect that the Club take nothing by its suit is reversed and the cause remanded for another trial.

The order granting a temporary injunction in favor of the Club is affirmed.