John MATUSZAK et al., Appellants,

v.

HOUSTON OILERS, INC., Appellee.

No. 1098.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Oct. 30, 1974.

Thomas R. McDade, William R. Pakalka, Fulbright & Crooker, Houston, for appellants.

W. R. Eckhardt, Vinson, Elkins, Searls, Connally & Smith, Ernest C. Hurst, Caldwell & Hurst, Houston, for appellee.

CURTISS BROWN, Justice.

This is an appeal from an interlocutory order granting a temporary injunction.

John Matuszak (Matuszak) and the Houston Texans (Texans) appeal from an order enjoining *pendente lite* the Texans from inducing, persuading, or encouraging John Matuszak to repudiate or breach his contracts with the Houston Oilers with regard to the 1974, 1975 and 1976 football seasons, and from interfering with the Oilers' contractual relations and business relations with Matuszak. Matuszak was enjoined from playing football or engaging in activities relating to football for any person, firm, corporation or institution other than the plaintiff Houston Oilers, except with the prior written consent of the Oilers and the Commissioner of the National Football League.

Matuszak, the National Football League's number one draft choice in 1973, signed four consecutive one-year contracts to play football for the Oilers in that year. He signed the N.F.L. Standard Players' Contract. This contract incorporates by reference all of the rules and regulations of the League including the so-called "Rozelle Rule." He received a $55,000 bonus and earned an additional $5,000 bonus for making the All-Rookie Team for the 1973–74 season. The contract provides in part:

"The Player promises and agrees that during the term of this contract he will not play football or engage in activities related to football for any other person, firm, corporation or institution, or on his own behalf, except with the prior written consent of the Club and the Commissioner. . . ;

The Player hereby represents that he has special, exceptional and unique knowledge, skill and ability as a football player, the loss of which cannot be estimated with any certainty and cannot be fairly or adequately compensated by damages and therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunction proceedings against playing football or any other professional sport, without the consent of the Club or engaging in activities related to football for any person, firm, corporation, institution, or on his own behalf, and against any other breach of this contract."

Matuszak, apparently dissatisfied with his lot on the Oilers, made contact with Mr. Steven Arnold of the Texans and indicated an interest in joining their team. He stated that he believed that the terms of his contract with the Oilers were so unfair as to be not binding. He signed a contract with the Texans, participated with them in a press conference to announce that he had jumped leagues, and played for them in their game against the New York Star, until served with a temporary restraining order. Prior to the hearing on the temporary injunction, Matuszak accompanied the Texans to Hawaii where he worked as a broadcaster for their game there.

The trial court entered a temporary injunction on September 10, 1974, finding that the Oilers had demonstrated a probable right to recover on the merits and had demonstrated a probable harm and inadequacy of their remedy at law. The court also found that Matuszak was unique and that his contract was presumptively valid.

Appellants Matuszak and the Texans attack the injunction on several grounds al-

leging: Abuse of discretion, reversible error in excluding evidence. and refusing to allow bills of exception, unenforceability of the contract as a matter of equity and the Anti-Trust Laws of Texas, improper admission of hearsay, and vagueness of the order.

■ It is the well settled standard of review for temporary injunctions that they may be overturned only where a trial court has clearly abused its discretion. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549 (1953). An applicant for a temporary injunction where permanent injunctive relief is sought upon final disposition must show a probable right on final hearing to a permanent injunction. Oil Field Haulers Ass'n v. Railroad Commission, 381 S.W.2d 183 (Tex.Sup.1964). In addition, they must demonstrate that they have no adequate remedy at law. May v. Lee, 28 S.W. 2d 202 (Tex.Civ.App.—Galveston 1930, no writ). In enforcing negative covenants ancillary to contracts of employment an additional element is required, that is, a determination of whether or not the person against whom relief is sought is a person of "exceptional and unique knowledge, skill and ability in performing the service called for in the contract." Dallas Cowboys Football Club, Inc. v. Harris, 348 S.W.2d 37, 42 (Tex.Civ.App.—Dallas 1961, no writ); Mission Independent School Dist. v. Diserens, 144 Tex. 107, 188 S.W.2d 568 (1945).

■ In assessing appellants' no evidence, insufficient evidence and great weight of the evidence points we must observe that the latter two are improper in an appeal from an order granting or denying temporary injunction. If there is some evidence of substantive and probative character we may not find that the trial court abused its discretion. Houston v. Southwestern Bell Tel. Co., 263 S.W.2d 169 (Tex.Civ.App.—Galveston, writ ref'd). It is also settled that fact findings on conflicting evidence will not be disturbed.

Sheehan v. Levy, 215 S.W. 229 (Tex.Civ. App.—Dallas 1919, writ granted), affm'd 238 S.W. 900 (Tex.Comm'n App.1922, opinion adopted). We are then left solely with appellants' no evidence points which must be viewed as contending that the evidence conclusively established that appellee had no right to equitable relief. On the basis of the evidence there is some substantial and probative evidence to support the trial court's finding. First, the testimony shows that the Texans and Matuszak were aware that he was under contract to the Oilers at the time he signed the Texans contract. The testimony also shows that the Texans publicized the signing. It is undisputed that Matuszak did play for the Texans in contravention of the contract with the Oilers. It is also undisputed that Matuszak received a $55,000 bonus, had made the All-Rookie Team in 1973 and had been the N.F.L.'s number one draft choice. This is not to say that the Oilers will necessarily prevail on the final disposition of this matter. However, we cannot say that the evidence conclusively showed that the Oilers would not be entitled to equitable relief.

■■ Appellants contend that the trial court abused its discretion in granting a temporary injunction because the contracts were in violation of the Texas Anti-Trust Laws and therefore unenforceable. Schnitzer v. Southwest Shoe Corporation, 364 S.W.2d 373 (Tex.Sup.1963). This contention cannot be sustained. We are faced with the question of federal pre-emption in this case. In the area of professional athletics, the Supreme Court of the United States has dealt with the question of pre-emption in the case of Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed. 2d 728 (1972). In that case the court expressly approved the lower court's appraisal of the burden which state anti-trust regulation would impose in this area. The Second Circuit opinion states:

On the one hand, it is apparent that each league extends over many states, and that, if state regulation were permissible,

the internal structure of the leagues would require compliance with the strictest state antitrust standard. The consequent extra-territorial effect of necessary compliance would be considerably more far-reaching than that in Southern Pacific Co. v. Arizona, *supra* (325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945)). On the other hand, we do not find that a state's interest in antitrust regulation, when compared with its interest in health and safety regulation, is of particular urgency. Hence, as the burden on interstate commerce outweighs the states' interests in regulating baseball's reserve system, the Commerce Clause precludes the application here of state antitrust law. (Flood v. Kuhn, 443 F.2d 264, 268 [2d Cir. 1971]).

We believe that this holding is applicable to the instant case. Professional football is subject to federal antitrust regulation. Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). Therefore, the question of whether Matuszak's contract violates federal law is a question for the Federal Courts.

Having found sufficient evidence to justify the trial court's findings of probable right, probable harm, and inadequacy of legal remedy, we believe that the trial court was justified in granting the temporary injunction to maintain the status quo except insofar as it attempted to enjoin Matuszak from "activities related to football." While this language is contained in the contracts in question no uniqueness of Matuszak is demonstrated with reference to any activity other than as a football player. Furthermore, the term is too general and nonspecific to be a legitimate part of an injunctive order. Rule 683 Texas Rules of Civil Procedure; Brownlee v. Kirkwood, 396 S.W.2d 504 (Tex.Civ.App. —Forth Worth 1965, no writ); but *see* World Foot. League v. Dallas Cowboys Foot. Club, Inc., 513 S.W.2d 102 (Tex.Civ. App.—Dallas 1974, no writ).

In making this holding we should not wish to be understood as intimating any view as to the ultimate outcome of this case on the trial on the merits. A hearing on a temporary injunction does not conclude the controversial issues between these litigants or finally determine the rights of Matuszak. Trial on the merits is the appropriate forum for disposition of these issues. Dallas Cowboys Football Club, Inc. v. Harris, 348 S.W.2d 37, 47 (Tex.Civ. App.—Dallas 1961, no writ).

For example, the record clearly raises a fact question here as to Matuszak's "uniqueness." The owner and coach of the Oilers took occasion to disparage the abilities of Matuszak, thus an ultimate finding of non-uniqueness would be supportable. Appellant makes an attack on the unenforceability of the contracts claiming they are so unconscionable and adhesive as to preclude equitable relief. Allright, Inc. v. Elledge, 515 S.W.2d 266 (Tex.Sup.1974). The contracts are incredibly one-sided. The options rest with the Club (except for payment upon performance) and any disputes are ultimately to be decided by the Commissioner and his findings are conclusive and unappealable. The Club signed Matuszak to four separate one-year contracts rather than one contract for four years in order to reduce the Club's financial exposure in the event of an injury to him. Sport contracts arranged so that the team can easily dispose of an injured player have been found unconscionable and unenforceable. Connecticut Professional Sports Corporation v. Heyman, 276 F.Supp. 618 (S.D.N.Y.1967).

■ In view of the fact that this case remains to be tried on its merits we take occasion to state that we agree with the appellant that the trial court took a far too restrictive view as to what evidence should have been received and unduly restricted the cross-examination of Gillman and Adams. Furthermore, under Rule 372 Tex.R.Civ.P. the refusal by the trial court to permit appellant to make a bill of exceptions was error. State v. Biggers, 360 S.W.2d 516 (Tex.Sup.1962); Smith v. State, 490 S.W.2d 902 (Tex.Civ.App.—

Corpus Christi 1972, writ ref'd n. r. e., per curiam, 500 S.W.2d 682). However, we are of the opinion that none of these matters were "such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Rule 434 Tex.R.Civ.P. We have reviewed all of appellants' points of error and have concluded that, in view of the limitations imposed upon us by law in reviewing an order granting a temporary injunction maintaining the status quo none of them present reversible error except that the injunction should be modified so as to eliminate from the injunction of Matuszak the portion of the order reading "or engage in activities related to football." Thus modified, the judgment is affirmed.

Costs of appeal are assessed one-half against appellants and one-half against appellee.

Modified and affirmed.

TUNKS, Chief Justice (dissenting).

I respectfully dissent from the holding of the majority for two reasons.

First, I would hold that it is error for a Texas court to lend its equitable powers to the enforcement of a contract, such as that involved in this case, which unquestionably is in violation of the public policy of this State as expressed in its anti-trust laws. Schnitzer v. Southwest Shoe Corporation, 364 S.W.2d 373 (Tex.Sup.1963). The fact that the federal government has preempted the field of regulation of anti-trust features of interstate contracts, Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), does not mean that a Texas court is obliged to use its equitable powers to enforce such a contract that is in violation of Texas' public policy.

Second, the contract which the Houston Oilers seek to have enforced by the court's use of its equitable powers was procured under circumstances where Matuszak had no freedom of choice. As a result of the combination and agreement between the twenty-six teams in the National Football League, Matuszak could deal with and play for only the Houston Oilers. The evidence shows that many of the terms of the standard contract tendered him were not negotiable. He was given only the option of accepting them or not playing professional football in the United States. Standing in such a position of overwhelmingly superior bargaining power, the Oilers compelled Matuszak to sign a contract which is grossly unfair to him. A court should not lend its equitable powers to the enforcement of a contract so termed and so procured. Allright, Inc. v. Elledge, 515 S.W.2d 266 (Tex.1974); Crowell v. Housing Authority of City of Dallas, 495 S.W.2d 887 (Tex.Sup.1973); Paxton v. Spencer, 503 S.W.2d 637 (Tex.Civ.App.—Corpus Christi, 1973, no writ); Steves v. United Services Automobile Association, 459 S.W.2d 930 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.); Inman v. Parr, 311 S.W.2d 658 (Tex.Civ.App.—Beaumont 1958, writ ref'd n. r. e.).

For the above reasons I would reverse the trial court's judgment and dissolve the temporary injunction.