02-019-177-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00177-CV

 

 


 
 
 ROBERT GENE CUNNINGHAM, INDIVIDUALLY AND AS REPRESENTATIVE
 OF THE ESTATE OF PATRICIA MAUDINE CUNNINGHAM, DECEASED
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 ZURICH AMERICAN INSURANCE COMPANY, ASSURANCE
 COMPANY OF AMERICA, AND TEXAS MEDICAL LIABILITY INSURANCE UNDERWRITING
 ASSOCIATION
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 141ST DISTRICT Court OF TARRANT
COUNTY

----------

OPINION

----------

This
appeal arises from a breach of contract claim against the insurance carriers
for two defendants in a medical malpractice case.  Appellant Robert Gene
Cunningham, Individually and as Representative of the Estate of Patricia Maudine
Cunningham, Deceased, (Cunningham) appeals from the trial court’s order denying
his motion for summary judgment and granting summary judgment for Appellees
Zurich American Insurance Company, its affiliated company Assurance Company of
America (collectively Zurich), and Texas Medical Liability Insurance
Underwriting Association (also referred to as the Joint Underwriting
Association) (JUA).  Because we hold the trial court did not err by granting
summary judgment for Zurich and JUA, we affirm.

I.  Facts
and Procedural History

In a
suit brought by Cunningham against Dr. Noble Ezukanma, Dr. Ladi Haroona, their
employer HealthFirst Medical Group, P.A., and others for medical malpractice, the
trial court rendered judgment against Ezukanma and HealthFirst, jointly and
severally, in the amount of $1,041,944.80.  The trial court rendered a take-nothing
judgment on Cunningham’s claim against Haroona.  Ezukanma and HealthFirst
appealed the judgment against them, and Cunningham appealed the take-nothing
judgment for Haroona.  JUA, the malpractice insurance carrier for Ezukanma,
deposited policy proceeds in the amount of $236,115.66 into the registry of the
court on Ezukanma’s behalf in lieu of a supersedeas bond.

The
trial court ordered the parties to attend post-judgment mediation, and before,
during, and after mediation and while the case was pending on appeal, Cunningham,
Ezukanma, and HealthFirst engaged in negotiations for a possible settlement.  JUA
and Zurich, the insurance carrier for HealthFirst, were also involved in the
settlement negotiations.  Zurich was represented by Laura Grabouski.  Stephen Johnson
represented Haroona, Mike Sheehan represented HealthFirst, Kevin Carey
represented Ezukanma, and John Wilson represented JUA.  The parties would later
dispute whether Carey also represented JUA.

Cunningham’s
attorney, Katherine Youngblood, made a “take-it-or-leave-it” demand to Ezukanma
and HealthFirst.  The demand, which Youngblood said would expire at noon on May
23, 2008, was for $650,000 from Zurich plus the funds that JUA had deposited
into the trial court’s registry.  In exchange, Cunningham would sign a release
of at least some of his claims; the parties later disagreed about whether they
had intended for Haroona to be included in the release.

On
the date of the deadline, Grabouski sent Youngblood an email at 10:29 a.m. that
stated:

This confirms that you have made a “take or leave it”
demand to HealthFirst and [Ezukanma] and their carriers . . . for
payment of $650,000 plus the amount . . . currently in the
court’s registry, in exchange for a complete release of those parties and
dismissal of all proceedings against such parties; and further that this demand
expires at noon today, Friday, May 23, 2008.  Based on that understanding,
Zurich, on behalf of HealthFirst and [Ezukanma], agrees to pay [Cunningham]
$650,000, provided that such amount is combined with payment of [Ezukanma’s]
JUA policy (and upon any necessary consents to same), in exchange for
[Cunningham’s] complete release of the above parties and dismissal of the
proceedings.  Zurich’s agreement to do so is further conditioned on execution
of a satisfactory Rule 11 agreement by counsel . . . and a
subsequent execution of a more formal agreement and release by the parties.

In
the days following Grabouski’s email, Youngblood, Grabouski, and Carey
exchanged a series of emails and letters that showed a disagreement over
whether Haroona was intended to be included in the release.  On May 27, 2008, Grabouski
sent Youngblood a proposed Rule 11 agreement that, in addition to the terms
mentioned in her email, included the release of Cunningham’s claims against
Haroona.  Youngblood struck out the portion regarding Haroona, signed the
agreement, and returned it.  She later prepared an “Agreement for Release of
Judgment” that Zurich and JUA declined to sign.  After Youngblood and Grabouski
exchanged emails and letters disputing whether Haroona was to be included and
whether they had a binding agreement, Carey notified Youngblood that he was
“convinced that there has not been a ‘meeting of the minds’ relevant to any
settlement” in the case and that he would not sign any agreed order abating or
dismissing the appeal until the parties had “a valid, fully executed [R]ule 11
agreement on file with the [trial court] resolving all claims with
indemnification to the benefit of [Ezukanma].”

Cunningham
filed suit against Zurich and JUA for breach of contract in Dallas County.  In
October 2008, on Zurich and JUA’s motion, the Dallas trial court transferred that
suit to Tarrant County under civil practice and remedies code section
15.002(b).[1]  This breach of contract
action is the underlying suit in the appeal now before us.

While
the breach of contract action was pending, Cunningham, Ezukanma, and
HealthFirst entered into a confidential settlement agreement regarding the
judgment in the malpractice suit.  Accordingly, in December 2008, Ezukanma,
HealthFirst, and Cunningham filed an agreed motion for partial nonsuit in the
breach of contract suit, seeking dismissal of all claims “seeking enforcement
and collection of the [j]udgment which have been or which could have been
asserted by [Cunningham] against any other party to this suit,” including a
claim seeking the full amount of the judgment from the malpractice action.  The
motion expressly states that the parties did not address Cunningham’s breach of
contract claim based on the alleged settlement agreement.  The trial court
signed an order of partial nonsuit in accordance with the motion.  Cunningham,
Ezukanma, and HealthFirst also filed in this court an agreed motion to dismiss
Ezukanma’s and HealthFirst’s appeals in the malpractice suit, which this court
granted.

In
the breach of contract action, Zurich, JUA, and Cunningham all filed motions
for summary judgment.  Zurich’s motion for summary judgment asserted, among
other grounds, that Grabouski’s May 23, 2008 email was a mere offer that was
withdrawn prior to acceptance; that the email did not meet the requirements of
Rule 11 of the rules of civil procedure and was therefore not an enforceable
settlement agreement; and that the email was not signed, prohibiting enforcement
under Rule 11.

JUA’s
motion for summary judgment adopted by reference Zurich’s motion and also
asserted that JUA never entered into a valid contract with Cunningham because
the email from Grabouski did not bind JUA; that there was no offer, acceptance,
or meeting of the minds between Cunningham and JUA; and that the email did not
satisfy Rule 11.

Cunningham
argued in his motion that the email constituted an acceptance of the material
terms necessary to constitute a valid contract.  The trial court denied
Cunningham’s motion and granted Zurich’s and JUA’s motions.  Cunningham now
appeals.

II. 
Standard of Review for Summary Judgment

We
review a summary judgment de novo.[2]  We consider the evidence
presented in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
evidence contrary to the nonmovant unless reasonable jurors could not.[3] 
We indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.[4]  A plaintiff is entitled
to summary judgment on a cause of action if it conclusively proves all
essential elements of the claim.[5]  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.[6]

When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties’ summary
judgment evidence and determine all questions presented.[7] 
The reviewing court should render the judgment that the trial court should have
rendered.[8]

III. 
Analysis

A.  Did the trial
court err by granting summary judgment for Zurich?

In
his first issue, Cunningham argues that the trial court erred by granting
summary judgment for Zurich.  When, as here, the trial court grants a summary
judgment but does not specify the ground relied on for its ruling, we must
affirm the judgment if any of the theories advanced by the movant have merit.[9]  In its summary
judgment motion, Zurich argued that it had never entered into a valid contract
with Cunningham, that Rule 11 prohibited enforcement of any purported settlement
agreement, and that the email was not an enforceable Rule 11 agreement.  In its
motion, Zurich did not specify whether it sought traditional or no-evidence
summary judgment and did not reference which subsection of the summary judgment
rule it relied on.  It did, however, set out the standard for granting
traditional summary judgment.  Zurich therefore appeared to move for
traditional summary judgment, not no-evidence summary judgment.  Zurich
therefore took upon itself the burden of proving its summary judgment grounds
as a matter of law.[10]  Accordingly, we look at
the evidence produced by the parties to determine if Zurich met its burden of
establishing as a matter of law that no contract existed.[11]

Cunningham
argues that the trial court erred if it granted summary judgment based on Rule
11.  He contends that Rule 11 does not apply because this agreement was made
after the trial court lost plenary power.

Rule
11 of the Texas Rules of Civil Procedure states, “Unless otherwise provided in
these rules, no agreement between attorneys or parties touching any suit
pending will be enforced unless it be in writing, signed and filed with the
papers as part of the record, or unless it be made in open court and entered of
record.”[12]  By its own terms, the
rule applies only to pending suits.[13] 
Cunningham argues that Rule 11 does not apply because this agreement was made
after the trial court’s plenary power had expired and while the cause was on
appeal, and therefore the suit was not “pending.”

In Kennedy
v. Hyde, the Supreme Court of Texas held that Rule 11 is applicable to
settlement agreements.[14] 
The court did not address what the word “pending” means in the rule and did not
reach the question of whether the rule applies to suits in which the trial court’s
plenary power has ended but the cause remains on appeal.  Nevertheless, we may
apply the court’s reasoning in that case, which noted the policy behind the
rule, as expressed by the court in 1857 in Birdwell v. Cox:

Agreements of counsel, respecting the disposition of
causes, which are merely verbal, are very liable to be misconstrued or
forgotten, and to beget misunderstandings and controversies; and hence there is
great propriety in the rule which requires that all agreements of counsel
respecting their causes shall be in writing, and if not, the court will not
enforce them.  They will then speak for themselves, and the court can judge of
their import, and proceed to act upon them with safety.  The rule is a salutary
one, and ought to be adhered to whenever counsel disagree as to what has
transpired between them.[15]

The Kennedy
court noted “the wisdom of the rule,” remarking that “[a]greements of counsel
in the course of a judicial proceeding which affect the interests of their
clients should not be left to the fallibility of human recollection.”[16]

Rule
11 does not specify that it applies only to suits pending only in the trial
court.[17] 
A reasonable application of the rationale and policy of Birdwell and Kennedy
dictates that the rule that settlement agreements must be in writing should be
applied whenever the cause is pending in the trial court or on appeal and
therefore has not been finally determined.

At
least one other court of appeals has reached a similar conclusion.  In Coale
v. Scott, the parties’ dispute over an easement resulted in a judgment for
the Scotts.[18] 
Years later, the Scotts moved the trial court to enforce the judgment.[19]  The trial court
granted the motion.[20] 
The Scotts then filed a motion to enforce a Rule 11 agreement, which had been
entered into after the trial court’s original judgment had become final.[21]  On appeal, the
Coales argued that the trial court did not have jurisdiction to enforce the
Rule 11 agreement.[22] 
The Amarillo Court of Appeals held that a trial court’s authority to approve a
Rule 11 agreement does not depend on whether the trial court has plenary power
over the judgment to which the settlement agreement relates.[23]  The court noted that

since a trial court has the continuing power to enforce
its judgments after they become final, . . . common sense tells
us that an attempt to have the court enforce its judgment, as was done here, is
tantamount to the continuation of an aspect of the underlying suit, i.e.
the effectuation of what was adjudicated.  So, a settlement agreement, like
that at bar, executed while the parties were attempting to sway the trial court
to enforce its judgment logically falls within the scope of “any suit pending”
for purposes of Rule 11.[24]

Although
our sister court’s holding determined whether any settlement touching an
enforcement proceeding would fall within the phrase “suit pending” as used in
Rule 11, a different scenario from this case, it disagrees with Cunningham’s
assertion that the applicability of Rule 11 depends on whether the trial court
has plenary power over the judgment giving rise to the settlement agreement.  In
the case before us, the underlying medical malpractice case was on appeal, which
means that it had not been finally disposed of.  And unless that judgment was
reversed on appeal, the trial court continued to have authority to enforce it;[25]
whether Cunningham would seek enforcement of that that judgment as rendered was
a matter that the parties were attempting to settle.

Cunningham
points to Guidry[26] in support of his
argument that the suit was not pending—and therefore Rule 11 did not
apply—because the trial court had rendered final judgment and the case was on
appeal.  But that case does not support Cunningham’s position.  In Guidry,
one party to a settlement agreement filed a motion to enforce the agreement,
but the motion was filed in a suit between the other party to the settlement
agreement and a third party.[27]  The enforcing party was
not a party to the suit and did not intervene in the suit.[28] 
Furthermore, the main target of the enforcing party’s motion was an entity
that, although a party to the settlement agreement, was not a party to the suit
in which the enforcing party filed its motion.[29]  Accordingly, the court
of appeals determined that the trial court lacked the power to grant the
requested relief.[30]  The court of appeals
did not hold that a suit that is pending on appeal is not pending for purposes
of Rule 11.

As
Cunningham points out, an exception to the writing requirement may arise when
the parties to an oral agreement do not dispute the existence or the terms of
the agreement.[31] 
But the parties here disputed both the existence of any final agreement and the
terms that had been agreed to by the time of the email.  The exception does not
apply.

Cunningham
also points out that an agreement that does not conform with Rule 11 may
nevertheless be enforced on equitable grounds such as fraud or mistake.[32]  But Cunningham does
not point this court to anywhere in the record where he produced evidence
raising a fact issue on an equitable ground that would render a nonconforming
agreement enforceable.[33]

Cunningham
argues in his reply brief that requiring compliance with Rule 11 would give Zurich
an unfair advantage because he would be denied payment after releases had been
given.  But that is not what happened here.  Grabouski sent the email on which
Cunningham relies on May 23, 2008, and within a week, it was apparent that
Youngblood and Grabouski disagreed about whether they had a final settlement
agreement.  Based on his belief that Cunningham, Zurich, and JUA had reached an
agreement that Zurich and JUA were refusing to honor, Cunningham filed this
action against them for breach of contract; although the record does not reveal
when the suit was originally filed, Zurich filed a motion to transfer venue and
motion to dismiss on June 30, 2008, indicating that Cunningham filed suit shortly
after the dispute over the email arose.  Cunningham did not release Ezukanma
and HealthFirst until those three parties reached a later settlement agreement
that all three parties agree exists, and the terms of which none of the three
disputes, which was entered into after Cunningham had already filed the breach
of contract suit against JUA and Zurich.  Zurich thus did not make false
promises or representations about payment in order to gain releases for
Ezukanma and HealthFirst, and then, once those releases were obtained, refuse
to pay on the ground that the parties did not have a signed agreement.  Cunningham
does not point out any other unfair advantage that Zurich gained by the
application of Rule 11.  We therefore cannot say that requiring compliance with
Rule 11 resulted in an unfair advantage to Zurich.

Citing
Masi v. Scheel,[34] Cunningham next contends
that Zurich waived the benefit of Rule 11 because it was required to plead
Cunningham’s noncompliance with Rule 11 in order to rely on that rule but did
not do so.  Cunningham also argues that he pled that all conditions precedent
had been met, Zurich did not plead any unsatisfied conditions precedent, and
therefore he did not have to prove that such conditions had been satisfied.  We
reject both of Cunningham’s contentions.

In its
second amended answer, which was verified, Zurich denied that the email was a
binding agreement and asserted a counterclaim for a declaratory judgment that
the email did not form a valid and enforceable contract and that Rule 11
prohibited its enforcement as a settlement agreement.  And in its response to
Cunningham’s motion for summary judgment, Zurich argued that the email was not
an enforceable Rule 11 agreement.[35]  Thus, unlike the
defendant in Masi, Zurich denied the existence of a settlement agreement
and pointed out the alleged agreement’s noncompliance with Rule 11.

Next,
Cunningham contends that Rule 11 does not apply to undisputed agreements and
that although Zurich disputed the legal effect of the email, it did not dispute
the fact or terms of the agreement.[36] 
But Zurich did dispute the terms of the agreement; since Grabouski sent the proposed
Rule 11 agreement to Cunningham, the parties have disputed whether Haroona was
supposed to be included in the settlement.  And Zurich also denied that the
parties had any final agreement at all[37]
and contended that the email, if it had any effect, was nothing more than an
offer to settle.  We therefore disagree with Cunningham’s argument.[38]  We hold that any
settlement agreement between Cunningham and Zurich had to be in writing and
signed, as required by Rule 11.  We overrule this portion of Cunningham’s first
issue.

We
next determine whether Zurich produced sufficient evidence to establish that no
Rule 11 agreement with Cunningham existed, and if it did do so, whether Cunningham
produced evidence in the trial court sufficient to raise a fact issue about
whether he had an agreement with Zurich that satisfied Rule 11.[39]

Zurich
pointed out in its summary judgment motion that Cunningham’s breach of contract
claim as pled was based on oral communications and on Grabouski’s email.  Zurich
then asserted that the email was not a binding and enforceable Rule 11
agreement because it left “material matters open for future adjustment.”  Zurich
also argued that Cunningham had attempted to change the terms of the agreement
because when Youngblood signed the proposed Rule 11 agreement sent by Grabouski
after the email, she crossed out the inclusion of Haroona in the release.

In
her email, however, Grabouski restated the offer made by Cunningham to HealthFirst
and Ezukanma and their respective insurance carriers and acknowledged that the
offer contained a promise of release by Cunningham in return for the payment of
$650,000 from Zurich and money in the court registry from JUA.  Grabouski then
indicated Zurich’s agreement to those terms on behalf of HealthFirst and
Ezukanma.  She did not mention Haroona at all, either when she confirmed her
understanding of the terms of Cunningham’s offer or when she accepted those
terms for Zurich “on behalf of HealthFirst and [Ezukanma].”  Because the email
contained an agreement to pay in exchange for release of liability, it
contained the essential terms of a settlement agreement, and Haroona was
plainly not included.[40]

But Rule
11 also required a signed writing,[41]
and Zurich argued in its summary judgment motion that the email was not
enforceable because it was not signed.  The fact that the email is an
electronic document does not prevent it from being enforceable under Rule 11
because, as Cunningham argues, under the uniform electronic transactions act, a
contract may be enforceable despite the use of an electronic record in its
formation, and “[i]f a law requires a signature, an electronic signature
satisfies the law.”[42] 
By statute, the term “electronic signature” “means an electronic sound, symbol,
or process attached to . . . a record and executed or adopted by
a person with the intent to sign the record.”[43]  An electronic signature is
“attributable to a person if it was the act of the person.”[44]
 In determining whether the signature was “the act of the person,” we look to
“the context and surrounding circumstances at the time of its creation,
execution, or adoption, including the parties’ agreement, if any, and otherwise
as provided by law.”[45] 
Whether the signature was the act of the person “may be shown in any manner,
including a showing of the efficacy of any security procedure applied to
determine the person to which the electronic record or electronic signature was
attributable.”[46] 
The uniform electronic transactions act “applies only to transactions between
parties each of which has agreed to conduct transactions by electronic means.”[47] 
As with determining whether a signature was the act of a person, in determining
whether the parties agreed to conduct a transaction by electronic means, we
consider the context and surrounding circumstances, including the parties’
conduct.[48]

With
the statutory requirements in mind, we consider whether Grabouski’s email to Youngblood
includes some marking executed or adopted by Grabouski with the intent to sign
the email.  The email does not contain a graphical representation of
Grabouski’s signature, an “s/” followed by Grabouski’s typed name, or any other
symbol or mark that unequivocally indicates a signature.[49]  The email does conclude, however,
with what is commonly referred to as a “signature block,” that is, a block of
information beginning with Grabouski’s name followed by her contact
information.[50]

There
is nothing to show that the signature block was typed by Grabouski and not
generated automatically by her email client.[51]  If Grabouski did
personally type the signature block at the bottom of the email, nothing in the
email suggests that she did so with the intention that the block be her
signature, and Cunningham does not direct us to any other place in the record
raising a fact issue about her intention.  And no evidence indicates that the
parties agreed to conduct the settlement transaction by electronic means.  We
decline to hold that the mere sending by Grabouski of an email containing a
signature block satisfies the signature requirement when no evidence suggests
that the information was typed purposefully rather than generated automatically,
that Grabouski intended the typing of her name to be her signature, or that the
parties had previously agreed that this action would constitute a signature.[52]  Because there is
no other evidence of an electronic signature, the email was not signed, and it
therefore does not meet the requirements of Rule 11.

Cunningham
argues that the trial court erred by overruling his special exceptions to
Zurich’s motion for summary judgment.  Cunningham excepted to Zurich’s motion
as failing to state specific grounds for summary judgment.  But Zurich clearly
asserted that it was entitled to judgment as a matter of law because any
settlement agreement had to comply with Rule 11 and that the email did not
comply with the rule because, among other reasons, it was unsigned.  Because we
may affirm the summary judgment on this single ground that Zurich clearly
asserted, any error by the trial court in overruling Cunningham’s special
exceptions was harmless.[53]

We
note that in Cunningham’s reply brief to Zurich’s sur-reply, he appears to
argue that the parties later entered into a settlement agreement, thereby
satisfying the “more formal agreement” and “satisfactory Rule 11 agreement”
conditions in the email.  But those assertions relate to an argument about whether
any conditions precedent in the email had been satisfied and do not address the
point that the email itself was not an enforceable Rule 11 agreement because it
was unsigned.  Cunningham does not direct this court to any evidence in the
record showing that Grabouski signed a written agreement including the terms
that Cunningham now seeks to enforce.  Accordingly, because the agreement
Cunningham seeks to enforce does not comply with the requirements of Rule 11,
we hold that the trial court properly granted summary judgment for Zurich, and
we overrule the remainder of Cunningham’s first issue.

B.  Did the trial
court err by denying summary judgment for Cunningham on his claim against
Zurich?

In
Cunningham’s second issue, he argues that the trial court erred by denying his
motion for summary judgment against Zurich.  Because we have held that the
trial court did not err by granting summary judgment for Zurich, we overrule
this issue.

C.  Did the trial
court err by granting summary judgment for JUA?

In
his third issue, Cunningham argues that the trial court erred by granting
summary judgment for JUA.

1.  Whether The
Trial Court Should Have Granted Cunningham’s Motion for Continuance

Cunningham
first argues under this issue that the trial court should have granted his
motion for continuance.  He asserts that he did not receive the minimum
twenty-one days’ notice of JUA’s second motion for summary judgment and
hearing.  He claims that he received notice on March 2, 2009, when Youngblood’s
postal worker notified her that she had a package on the front porch of her
home, where she also has her office.  The package contained JUA’s motion and
notice of the hearing set for eighteen days later on March 20, 2009. 
Cunningham filed a motion for continuance based on inadequate notice, which the
trial court denied.

In
response JUA argues that the package was delivered to Youngblood’s house on
February 27, 2009.  JUA also argues that leaving the documents on her doorstep
was a proper method of service, citing O’Connor’s Texas Rules in support of
this assertion.  As JUA’s counsel is aware, O’Connor’s does not carry the force
of law.[54]  JUA cites no other authority
in support of its assertion that leaving notice of a hearing on someone’s front
porch constitutes proper service.

However,
even if JUA’s method of service was insufficient, a holding we do not need to make
here, before this court may reverse the summary judgment on such grounds, Cunningham
must show on appeal that he was harmed.[55]  Cunningham does not
dispute that he received actual notice of the hearing, and he has not shown
that he was harmed by receiving only eighteen days’ notice instead of twenty-one
or by the trial court’s failure to grant him a continuance based on receiving
less than twenty-one days’ notice.  We therefore overrule this part of
Cunningham’s third issue.

2.  Whether The
Trial Court Erred by Granting Summary Judgment On The Ground That No Contract
With JUA Existed

As one
of its asserted grounds for summary judgment, JUA argued that it had never
entered into a valid contract with Cunningham.  Like Zurich, JUA did not
specify in its motion whether it sought traditional or no-evidence summary
judgment and did not reference which subsection of the summary judgment rule it
relied on.  But because JUA attached evidence to its motion and did not point
out specifically which elements of his claim for which Cunningham had no
evidence, JUA appeared to move for traditional summary judgment, not
no-evidence summary judgment.  JUA therefore took upon itself the burden of
proving the non-existence of a contract.[56]  We thus look at the
evidence produced by the parties to determine if JUA met its burden of
establishing as a matter of law that no contract existed.[57]

In
support of its motion, JUA argued that in Cunningham’s petition, the only
writing on which he based his contract claim was Grabouski’s email and that
this email did not satisfy the requirements of Rule 11.

JUA
directed the trial court to Youngblood’s deposition, in which she stated that
the only signed writing that she had with respect to an agreement with JUA was
the email.  JUA also pointed out the portion of Youngblood’s deposition
testimony in which she stated that she had not accepted any offer from JUA for
Cunningham prior to the email on the ground that she would not accept it
without also having an agreement with Zurich, because she “wasn’t going to
settle for $200,000 a million-dollar judgment.”  In his response, Cunningham
argued that he had entered into a valid oral agreement with JUA through Carey,
its negotiating agent, and that this agreement was confirmed via Grabouski’s
email, which itself was orally confirmed and ratified by Carey.

On
appeal, Cunningham argues that JUA did not meet its burden to prove that no
contract existed and that the trial court erred if it granted summary judgment
on this ground.  Cunningham argues that he had an oral agreement with JUA
through Carey, that Rule 11 does not apply to prevent its enforcement, and that
if Rule 11 does apply, the email satisfies its requirements.

As
with his agreement with Zurich, any settlement agreement between Cunningham and
JUA had to be in writing and signed, as required by Rule 11.  Cunningham argues
that JUA waived Rule 11’s applicability because it did not plead it and that
JUA did not amend its answer to specifically deny Cunningham’s compliance with
Rule 11 until after the hearing on Cunningham’s summary judgment motion, which
Cunningham argues made it untimely.  But JUA did argue in its response to
Cunningham’s summary judgment motion that the email did not satisfy Rule 11.[58] 
JUA therefore did not waive its argument regarding Rule 11 by failing to plead
it.

As
to Cunningham’s Rule 54 argument,[59] assuming that compliance
with Rule 11 is a condition precedent,[60] the question of whether
Rule 11 applied and whether the email satisfied the rule was raised and argued
by both parties throughout the trial court proceedings.  In its original
answer, JUA denied that the email on which Cunningham based his claim was
signed by JUA.  In its subsequent amended answers, JUA specifically denied that
it had executed an agreement with Cunningham and that Cunningham had delivered
an executed contract to JUA, but it did not specifically deny that the email
was signed by JUA.  JUA nevertheless could and did put on evidence about
whether the email satisfied Rule 11.[61]  In its motion for
summary judgment, JUA pointed out that Rule 11 required the agreement to be
signed and argued that the email was not signed.  Cunningham also continued to
argue, both in his summary judgment motion and in his responses to JUA, that
Rule 11 did not apply but that, if it did apply, the email satisfied the
requirements of the rule.  JUA thus did not waive its argument that Rule 11
applied and that the email was unenforceable under that rule.  We therefore
consider whether JUA proved as a matter of law that it had no enforceable Rule
11 agreement with Cunningham.

With
its motion, JUA attached the affidavit of Sally Stewart, a JUA claims manager. 
In the affidavit, Stewart stated that neither Grabouski nor Carey represented
JUA or had the authority to negotiate a settlement for JUA.  Cunningham objected
in the trial court to Stewart’s affidavit on the grounds that Stewart was not
timely or properly disclosed as a witness and that the affidavit was conclusory
and did not show that she had personal knowledge of the facts stated in the
affidavit.  The trial court overruled Cunningham’s objections.

Cunningham
now argues that the trial court erred by overruling his objections to Stewart’s
affidavit because it is conclusory and not based on personal knowledge.  We
agree with Cunningham that the trial court should have excluded Stewart’s
affidavit on the ground that it was not based on personal knowledge.  In her
affidavit, Stewart stated that she is the claim manager for JUA and that she
has personal knowledge of the facts stated in her affidavit.  She then states
that although Cunningham claims to have a contract with JUA based on
Grabouski’s email, Grabouski is not JUA’s attorney, is not an agent of JUA, and
was not given authority by JUA to act on its behalf.  She then states that JUA
did not send Grabouski’s email and did not approve or ratify it, that JUA did
not enter into a contract with Cunningham prior to October 2008, and that JUA
had no verbal settlement agreement with Cunningham prior to October 2008.

Nothing
in Stewart’s affidavit shows a basis for her to have personal knowledge of
whether JUA has hired a particular attorney, whether JUA has given an attorney
authority to act on its behalf, whether JUA had approved or ratified
Grabouski’s email, or whether JUA’s attorneys were engaged in settlement negotiations
with Cunningham.  She asserted that she is a claims manager, but she does not
aver what her job entails or give any indication of how the job gives her
personal knowledge of the facts she asserts.  She did not state, for example,
that her job required her to be involved in every stage of the claims process,
including all settlement negotiations and all communications by JUA attorneys
with other parties.  That she works on claims filed with JUA is not enough to
show personal knowledge of the kinds of facts she asserted in her affidavit.

JUA
presented no other evidence that Carey and Grabouski were not authorized to
negotiate a settlement with Cunningham on behalf of JUA.  That it presented no
testimony from Carey or JUA’s attorney Wilson, two individuals with personal
knowledge of the representations that they had made to Youngblood, is striking
to say the least.  And we note that in JUA’s answers to Cunningham’s
interrogatories, when asked if Carey had authority to negotiate on behalf of
JUA, it objected and would only answer that the email did not reference any
negotiations by Carey regarding the JUA funds in the court’s registry.  But
despite JUA’s failure to produce competent evidence on this point, the trial
court had before it evidence that was sufficient to negate the existence of an
agreement satisfying Rule 11.

In
her deposition, Youngblood acknowledged that the only signed writing she had
evidencing a contract was the email.  But as we have already held, the email
was not signed.  Furthermore, nothing in the email text indicates JUA’s
acceptance of Cunningham’s offer, only the acceptance of HealthFirst and
Ezukanma.  Thus, even if Grabouski had the authority to negotiate for JUA and
bind it to an agreement reached in negotiations, this email does not indicate
that Grabouski was agreeing to any terms on behalf of JUA.  Because this email
does not meet the requirements of Rule 11 with respect to JUA and because JUA
produced summary judgment evidence showing that Cunningham had no other writing
evidencing JUA’s agreement that satisfied Rule 11, JUA met its summary judgment
burden.[62] 
On appeal, Cunningham does not point out any summary judgment evidence produced
in the trial court that raised a question of fact on the existence of any other
writing satisfying Rule 11.  Accordingly, we cannot say that the trial court
erred by granting summary judgment for JUA.

Cunningham
next argues that the trial court erred by overruling his special exceptions. 
Cunningham did not specially except to the part of JUA’s motion in which it
asserted as a ground for summary judgment that the email was not an enforceable
Rule 11 agreement.  Accordingly, if the trial court erred by overruling Cunningham’s
special exceptions, any such error was harmless.[63] 
We overrule the remainder of Cunningham’s third issue.

D.  Did the trial
court err by denying Cunningham’s motion for summary judgment against JUA?

In
his fourth issue, Cunningham argues that the trial court erred by denying his
motion for summary judgment on his claim against JUA.  Having determined that
the trial court did not err by granting summary judgment for JUA on
Cunningham’s claim, we overrule this issue.

E.  Did the Dallas
County trial court err by transferring the case to Tarrant County?

In
his fifth issue, Cunningham argues that the Dallas County district court erred
by transferring this case to Tarrant County, where venue was lacking, based on
“convenience of the parties.”  He points out that section 15.002(b) of the
civil practice and remedies code allows transfer of venue for convenience of
the parties when the trial court makes three specified findings.[64] 
He then notes that the trial court in this case did not make those findings. 
He also argues that section 15.002(b) allows transfer to another county of proper
venue and that he established in the trial court that Tarrant County was not a
proper county.  Thus, he argues, the trial court erred by granting the motion
to transfer venue.  He also argues that this court may review that order
despite the language of section 15.002(c), which states that “[a] court’s
ruling or decision to grant or deny a transfer under Subsection (b) is not
grounds for appeal . . . and is not reversible error.”[65] 
He argues that the cases discussing section 15.002(b) and (c) involved cases
where transfer was to a proper county, and because transfer in this case was
not to a proper county, the order is reviewable.

The statute
itself and the Supreme Court of Texas’s opinion in Garza v. Garcia[66]
leads us to a different conclusion.  In that case, the defendant moved for a
transfer of venue to Hidalgo County because all of the events giving rise to
the claim arose there, and alternatively asked the court to transfer to Hidalgo
“for the convenience of the parties.”[67]  The trial court granted
the motion, and its order gave no reasons for granting the transfer, “and in
particular never mentioned the term ‘convenience of the parties.’”[68] 
The Supreme Court held that the trial court’s order was beyond review.  The
court noted the general rule that “trial judges and lawyers need not detail
specific findings in every order” and stated that it did not believe the
potential for error or injustice in that case justified making an exception to
the rule.[69]  Thus, a trial court is
not required to state that it had made the three required findings in section
15.002(b) in its order.  The court further stated that “it is irrelevant
whether a transfer for convenience is supported by any record evidence,”
and it noted that, “[h]ypothetically, a trial judge could state there was no
evidence for a convenience transfer, but grant it nonetheless, and . . . there
is very little we could do about it.”[70]  Thus, whether
Cunningham established that Tarrant County was not a proper venue is irrelevant
to the question of whether we may review the order.

The
statute states that an order granting a transfer for convenience of the parties
is not reviewable, and it does not condition its application on whether the
trial court made the findings required under subsection (b) or whether the
order was supported by evidence.[71]  Under Garza and
the plain language of the statute, the trial court’s order is not reviewable by
this court.  We overrule Cunningham’s fifth issue.

IV. 
Conclusion

Having
overruled all of Cunningham’s issues, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT
and GARDNER, JJ.

 

DELIVERED:  September 15,
2011









[1]Tex.
Civ. Prac. & Rem. Code Ann. § 15.002(b) (West 2002).





[2]Travelers
Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).





[3]Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).





[4]20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).





[5]See
Tex. R. Civ. P. 166a(a), (c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60
(Tex. 1986).





[6]Frost
Nat’l Bank v. Fernandez, 315 S.W.3d 494, 508 (Tex. 2010), cert. denied,
131 S. Ct. 1017 (2011); see Tex. R. Civ. P. 166a(b), (c).





[7]Mann
Frankfort, 289 S.W.3d at 848; see Myrad Props., Inc. v. Lasalle Bank
Nat’l Ass’n, 300 S.W.3d 746, 753 (Tex. 2009).





[8]Mann
Frankfort, 289 S.W.3d at 848.





[9]Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).





[10]See
Tex. R. Civ. P. 166a(c).





[11]See
FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex.
2000) (“When both sides move for summary judgment and the trial court grants
one motion and denies the other, the reviewing court should review both sides’
summary judgment evidence.”).





[12]Tex.
R. Civ. P. 11.





[13]Estate
of Pollack v. McMurrey, 858 S.W.2d 388, 393 (Tex. 1993).





[14]682
S.W.2d 525, 530 (Tex. 1984).





[15]18
Tex. 535, 537 (1857) (emphasis added).





[16]Kennedy,
682 S.W.2d at 530 (quoting Wyss v. Bookman, 235 S.W. 567, 569 (Tex.
Comm’n App. 1921, holding approved)).





[17]Tex.
R. Civ. P. 11; see, e.g., Dallas Cowboys Football Club, Inc. v. Harris,
348 S.W.2d 37, 40 (Tex. Civ. App.—Dallas 1961, no writ) (holding that the
language in a temporary injunction providing that the injunction shall issue
“pending final hearing and determination of this cause” meant that the
injunction remained in effect pending final determination on appeal).





[18]331
S.W.3d 829, 830 (Tex. App.—Amarillo 2011, no pet.).





[19]Id.





[20]Id.





[21]Id.
at 830–31.





[22]Id.
at 831.





[23]Id.





[24]Id.
(citations omitted).





[25]See
Kenseth v. Dallas County, 126 S.W.3d 584, 598 (Tex. App.—Dallas 2004, pet.
denied) (“The trial court always has authority to enforce its judgments and to
disburse money held in its registry.”).





[26]Envtl.
Procedures, Inc. v. Guidry, 282 S.W.3d 602 (Tex. App.—Houston [14th Dist.]
2009, pet. denied).





[27]Id.
at 635.





[28]Id.





[29]Id.





[30]Id.
at 635–36.





[31]See
Anderson v. Cocheu, 176 S.W.3d 685, 688–89 (Tex. App.—Dallas 2005, pet.
denied); see also Kennedy, 682 S.W.2d at 529 (noting that “an undisputed
stipulation may be given effect despite literal noncompliance with the rule”).





[32]See
Kennedy, 682 S.W.2d at 529.





[33]See
Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995) (analogizing Rule 11’s
writing requirement to the statute of frauds); Meyer v. Tex. Nat’l Bank of
Commerce of Houston, 424 S.W.2d 417, 419 (Tex. 1968) (stating that to avoid
application of the statute of frauds on equity grounds requires “something more
than a mere wrong or breach of contract”).





[34]724
S.W.2d 438, 439 (Tex. App.—Dallas 1987, writ ref’d n.r.e.) (“[W]hether or not
the oral agreement itself is denied, the failure to plead the requirements of
rule 11 is a waiver of its benefits.”).





[35]See
Tex. R. Civ. P. 166a(c) (“Issues not expressly presented to the trial court by
written motion, answer or other response shall not be considered on
appeal as grounds for reversal.”) (emphasis added); City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979) (stating that to defeat
summary judgment, “the non-movant must now, in a written answer or response
to the motion, expressly present to the trial court those issues that would
defeat the movant’s right to a summary judgment”) (emphasis added).





[36]See Anderson, 176 S.W.3d at 689 (stating that when the existence of the agreement and its
terms are not disputed, the agreement may be enforced despite its noncompliance
with Rule 11).





[37]See,
for example, Grabouski’s email to Youngblood on May 28, 2008, in which she
stated, “If my letters earlier today and yesterday were not clear enough, let
me be clear here.  You seem to claim that my email of Friday, May 23 forms the
basis of a contract.  We disagree for the reasons set forth in my correspondence.”





[38]See
London Mkt. Cos. v. Schattman, 811 S.W.2d 550, 552 (Tex. 1991) (stating that once the existence of an agreement between attorneys or
parties concerning a pending suit becomes disputed, “it is unenforceable unless it comports with these requirements.”).





[39]See
Tex. R. Civ. P. 166a(c).





[40]See
Padilla, 907 S.W.2d at 460–61 (holding
in a case involving a settlement agreement that an agreement to pay in
settlement of claims contained all the material terms of the agreement); CherCo
Props., Inc. v. Law, Snakard & Gambill,
P.C., 985 S.W.2d 262, 265–66 (Tex. App.—Fort
Worth 1999, no pet.) (holding that a settlement agreement, in which the
appellees promised to pay the appellant in exchange for the appellant’s promise to release them from liability, contained all the material terms of the agreement).





[41]See
Tex. R. Civ. P. 11.





[42]Tex.
Bus. & Com. Code Ann. § 322.007 (West 2009).





[43]Id. § 322.002 (West 2009) (emphasis
added).





[44]Id.
§ 322.009(a) (West 2009).





[45]Id.
§ 322.009.





[46]Id.
§ 322.009(a).





[47]Id.
§ 322.005(b) (West 2009).





[48]Id.
§ 322.005.





[49]See,
e.g., N.D. Tex. R. 11.1 (“An attorney who submits a document for filing by
electronic means must place on the document an ‘s/’ and the typed name of the
attorney, or a graphical signature, in the space where the attorney’s signature
would have appeared had the document been submitted on paper.”).





[50]See
Jill Schachner Chanen, Netting Surfers With A “Hula” Hook, ABA J., Sept. 1999,
at 78, 79 (describing an email’s signature block as a block “detailing the
sender’s name, address and other information”).





[51]See
id. (noting that most email programs “allow a signature block . . . to be built
into every message sent”); but cf. Lamle v. Mattel, Inc., 394
F.3d 1355, 1357, 1362 (Fed. Cir. 2005) (holding, without discussion of intent
to sign, that an email ending with a salutation from the sender stating “Best
regards Mike Bucher” satisfied the statute of frauds because, under California
law, a typed name is sufficient to constitute a signature).





[52]See,
e.g., 16 Tex. Admin. Code § 402.412 (2009) (Tex. Lottery Comm’n, Signature
Requirements) (categorizing an email as including an original signature if the email
originates from someone whose personal email address has previously been
submitted to the commission and the email includes the sender’s name, the
associated organization’s name, and the address of either the individual or
organization on file with the commission).





[53]Tex.
R. App. P. 44.1(a); see Carr, 776 S.W.2d at 569 (noting that when
a trial court’s order granting summary judgment does not specify the grounds
relied upon, we must affirm if any of the summary judgment grounds have merit).





[54]Bair
Chase Prop. Co., LLC v. S & K Dev. Co., 260 S.W.3d 133, 142 n.5 (Tex.
App.—Austin 2008, pet. denied) (stating that a treatise is not binding on the
court of appeals); Simplex Elec. Corp. v. Holcomb, 949 S.W.2d 446, 448
(Tex. App.—Austin 1997, pet. denied) (same).





[55]See
Tex. R. App. P. 44.1; Martin v. Martin, Martin & Richards, Inc., 989
S.W.2d 357, 359 (Tex. 1998) (stating that notice of a hearing on a summary
judgment motion is required but is not jurisdictional and holding that the
trial court’s error in granting a summary judgment motion without notice of the
hearing was harmless in that case); see also Meeks v. Spencer, No. 02-05-00266-CV,
2006 WL 1174229, at *3 (Tex. App.—Fort Worth May 4, 2006, no pet.) (mem. op.)
(holding that the appellant had not shown harm from receiving only twenty-three
day’s notice of the hearing instead of the twenty-four days required for
service by mail when he had not shown what he could or would have done in the
missing twenty-four hours).





[56]See
Tex. R. Civ. P. 166a.





[57]See
FM Props. Operating Co.,
22 S.W.3d at 872.





[58]See
Clear Creek Basin Auth., 589 S.W.2d at 679; see, e.g., Roark v.
Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 494 (Tex. 1991) (holding
that “an unpleaded affirmative defense may also serve as the basis for a
summary judgment when it is raised in the summary judgment motion, and the
opposing party does not object to the lack of a rule 94 pleading in either its
written response or before the rendition of judgment”).





[59]See
Tex. R. Civ. P. 54.





[60]See,
e.g., J.P. Ryan Enters., Inc. v. Matthaei, No. 09-06-00237 CV, 2007
WL 1219443, at *5 (Tex. App.—Beaumont Apr. 26, 2007, no pet.) (mem. op.) (holding
that the trial court erred by applying Rule 54 so as to relieve the plaintiff
of the burden of proving the elements of his cause of action and to prevent the
defendant from presenting evidence to challenge the elements); Love of God
Holiness Temple Church v. Union Standard Ins. Co., 860 S.W.2d 179, 181
(Tex. App.—Texarkana 1993, writ denied) (holding in suit relating to an
insurance contract that because coverage relates to the agreement itself and is
not a condition precedent, the plaintiff was not relieved of proving coverage
by the defendant’s general denial).





[61]See
Texas Educ. Agency v. Stamos, 817 S.W.2d 378, 387 (Tex. App.—Houston [1st
Dist.] 1991, writ denied) (“[W]hile the state of the pleadings relieved
plaintiffs of putting on proof of their exhaustion of administrative remedies
as an element of their cause of action, it did not prevent unobjected to
evidence on the issue serving as a basis for the trial court’s judgment.”); see
also Occidental Neb. Fed. Sav. Bank v. E. End Glass Co., 773 S.W.2d
687, 688 (Tex. App.—San Antonio 1989, no writ) (holding that even though the bank
failed to plead any noncompliance with conditions precedent, the issue was
tried by consent when evidence on the issue was admitted without objection).





[62]See
Frost Nat’l Bank, 315 S.W.3d at 508; see Tex. R. Civ. P. 166a(b),
(c).





[63]See
Tex. R. App. P. 44.1(a).





[64]Tex.
Civ. Prac. & Rem. Code Ann. § 15.002(b).





[65]Id.
§ 15.002(c).





[66]137
S.W.3d 36 (Tex. 2004).





[67]Id.
at 38.





[68]Id.
at 41 (Phillips, J. dissenting).





[69]Id.
at 39.





[70]Id.





[71]Tex.
Civ. Prac. & Rem. Code Ann. § 15.002(c).